#### EBER B. WARD, SURVIVOR, &c., OWNER OF THE STEAMBOAT DETROIT, APPELLANT, *v.* CHARLES THOMPSON.

Where certain parties joined together to carry on an adventure in trade for their mutual benefit—one contributing a vessel, and the other his skill, labor, experience, &c.—and there was to be a communion of profits on a fixed ratio, it was a contract over which a court of admiralty had no jurisdiction.

THIS was an appeal from the Circuit Court of the United States, sitting in admiralty, for the district of Michigan.

It was a libel filed by Eber B. Ward against Charles Thompson, in the District Court of the United States, in a cause of contract, civil and maritime. The ground of the libel was the agreement which will presently be reported. The District Court dismissed the libel, which decree was affirmed by the Circuit Court upon an appeal. The libellant brought the case up to this court.

The case was submitted on printed arguments by *Mr. New-*

*berry* for the appellant, and *Mr. Hand* and *Mr. Lothrop* for appellee. These arguments embraced the whole merits of the contest between the parties; but as the only point considered in the decision in this court relates to the construction of the following contract, they need not be further noticed:

"Memorandum of an agreement between E. B. & S. Ward, of Detroit, Michigan, of the first part, and Charles Thompson, of Canada West, of the second part, witnesseth: That the said party of the first part agree to allow the party of the second part to run the steamer Detroit between the Sault Ste. Marie and Penetanguishene during the remainder of the sailing season of 1852, and all the year A. D. 1853, in a line with and under the general control and management of the party of the second part, who is to appoint all the officers and crew of said steamer, except the clerk or purser, who is to be under the control of the parties of the first part, and subject to their direction. Said steamer is to be paid for the transportation of the Government mails, and for all freights and passengers, the same rates as have heretofore been charged by steamers on the route aforesaid.

"The receipts of the said steamer are to be applied as follows:

"First. All expenses for crew, fuel, repairs, and supplies, are to be paid.

"Secondly. The cost of insuring said steamer, to the amount of twelve thousand dollars, to be paid by E. B. & S. Ward.

"Thirdly. E. B. & S. Ward are to be paid, out of the first net earnings of said steamer, six thousand dollars.

"Fourthly. All the remaining balance, after paying the above, is to be equally divided between E. B. & S. Ward and Charles Thompson aforesaid. The clerk of said boat will be required to make reports as often as once in two weeks of the receipts and expenditures of said steamer, and furnish the said Thompson and Wards each a copy. The said Thompson is to be paid three hundred dollars per year, out of the earnings of said boat, for his services as agent for said steamer

Should the said steamer be damaged by any accident, or require repairs, such expenses are to be paid for by said steamer out of her own earnings, the same as for supplies. It is further agreed and understood that the said Charles Thompson is to protect, defend, and guaranty said steamer against any and all infringements of the revenue law of the United States or Great Britain. The said steamer is to be returned and delivered unto the said parties of the first part on the first day of December, 1853, at Detroit, in the same condition (ordinary wear and tear excepted) as she is now in. Should the said steamer be lost before she shall have earned the above sum of six thousand dollars, to be paid to the said E. B. & S. Ward, said Thompson is not to be held liable to pay any part thereof, but the said Thompson shall be held responsible for the negligence, misconduct, or wilful mismanagement, of the said steamer, by the officers under his control and management. In case of any partial loss, for which insurance would be paid, such insurance, when collected, shall be applied to the repairs aforesaid. The said Thompson agrees to furnish good merchantable wood for said steamer, during the time she may be running in his service, at $1 per cord; the best of hard wood, if full four feet long, to be $1.12½ per cord.

"(Signed)          -          E. B. WARD.          [L. S.]
"(Signed)                    S. WARD.             [L. S.]
"(Signed)                    CHARLES THOMPSON.   [L. S.]

"Signed, sealed, and delivered, this 10th day of June, A. D. 1852.

"Witness, (Signed)          ALEXANDER M. MCGREGOR.

"Memorandum. The Detroit is to be delivered as soon as she returns from Buffalo, on her present trip.

"(Signed)                              E. B. WARD."

Mr. Justice GRIER delivered the opinion of the court.

The articles of agreement containing the contract, which is the subject matter of this suit, are denominated in the libel a charter-party of the steamboat Detroit to respondent. The answer denies that he had chartered the vessel, and alleges that the writing declared on is a contract of partnership, and

not a charter-party. The Circuit Court agreed with the respondent as to the construction of the contract, and consequently dismissed the bill.

A court of admiralty takes cognizance of certain questions between part owners, as to the possession and employment of the ship, but will not assume jurisdiction in matters of account between them. (Orleans *v.* Phœbus, 11 Peters, 175.) It is not disputed that a contract of partnership in the earnings of a ship comes within the same category. If the party desires an account, his remedy is in a court of chancery. If his complaint be for a breach of some independent covenant, he should seek his remedy in a court of common law.

A charter-party is defined to be "a contract by which a ship, or some principal part thereof, is let to a merchant, for the conveyance of goods on a determined voyage to one or more places."

A contract of partnership is where parties join together their money, goods, labor, or skill, for the purposes of trade or gain, and where there is a community of profits.

The only characteristics of a charter-party to be found in this contract are, that the subject of it is a ship, and that libellants are owners. There is no letting or hiring of the ship to the respondent for a given voyage, to be employed by him for his own profit. On the contrary, the Wards contributed a steamboat, to be put into a line for freight and passengers, which has also a contract for carrying the mail. Thompson contributes the good will of an established line, together with his care, skill, and experience. He is to have the general management of the business, and the selection of the officers and crew; but the clerk, or receiving and disbursing agent, is to be appointed by the Wards, and to be under their control.

The receipts of the steamer are to be applied—

1st. To pay expenses.

2d. Insurance.

3d. Six thousand dollars to Ward.

4th. Three hundred to Thompson.

5th. The balance of the profits to be equally **divided.**

Here we have everything necessary to constitute a partner-ship:

1st. The parties have *joined* together to carry on a certain adventure or trade, for their mutual profit—one contributing the vessel, the other his skill, labor, and experience, &c.

2d. There is a communion of profits, on a fixed ratio.

Of such a contract, a court of admiralty has no jurisdiction.

The decree of the Circuit Court is therefore affirmed, with costs.