## APPEAL OF R. A. BARTLEY.

Docket No. 2623.          Decided September 18, 1926.

1. The taxpayer entered into an agreement with his wife, on March 10, 1900, which declared that each was an owner of an undivided one-half interest of all of the property and assets connected with a wholesale grocery business conducted in the taxpayer's name and provided that the net profits and losses thereof should be equally divided between them, which agreement continued in full force and effect during the years 1918 and 1919. *Held*, that a partnership existed between the parties for the years 1918 and 1919.

2. The partnership included in its inventory at December 31, 1919, certain merchandise which was afterwards found to be worthless. *Held*, that the inventory may not be reduced by the amount of the goods discovered to be worthless in 1920.

*Homer Sullivan, Esq.*, and *P. J. McCumber, Esq.*, for the petitioner.

*Ellis W. Manning, Esq.*, for the Commissioner.

This is an appeal from the determination of deficiencies in income tax of $772.08 for the year 1918 and $31,494.74 for the year 1919.

The points in issue are (1) whether the wholesale grocery business conducted by the taxpayer in his own name was a sole proprietorship or a partnership, and (2) whether the inventory at December 31, 1919, should be reduced by eliminating therefrom the cost or market value of certain merchandise included in the inventory which was found in 1920 to be worthless as of the date the inventory was taken.

### FINDINGS OF FACT.

During the years 1918 and 1919, and for approximately 35 years prior thereto, the taxpayer was engaged in the wholesale grocery business in Toledo, Ohio. The business was always conducted under the name of R. A. Bartley. Some time prior to 1890, the bookkeeper was a woman who later became the taxpayer's wife. For many years

prior to 1900, an agreement existed between the taxpayer and his wife whereby she had an interest in the business. On March 10, 1900, a written agreement was entered into between the parties which reads as follows:

MEMORANDUM OF AGREEMENT made and entered into this 10th day of March, 1900 by and between RUDOLPH A. BARTLEY of the first part, and HARRIET BARTLEY, his wife, of the second part, WITNESSETH:

WHEREAS, the parties hereto have been and are now jointly interested in the wholesale grocery business and all the assets thereof carried on under the name of R. A. Bartley, the party of the second part having acquired her interest therein by her contribution to said business by services and otherwise, and also by the terms of a post-marital agreement had between the parties hereto:

For the purpose of definitely declaring the several interests of the parties hereto in said business and the assets thereof, and to specifically provide the terms and conditions for the continuance thereof, it is now agreed between the parties as follows, to-wit:

First: That each of the parties hereto is the owner, in his and her own right, of the undivided one-half of all of the property and assets of every kind, nature and description connected with said business, including the stock of merchandise, accounts and good will thereof, together with all of the accretions heretofore or hereafter to be made thereto, and all other accounts, charges or indebtedness from either to the other are declared to be fully settled and adjusted to this date, and upon the basis hereof.

Second: That the said business shall be continued, as heretofore under the name of R. A. Bartley, and under his direction and personal supervision, the net profits and losses thereof to be equally divided between the parties hereto.

Third: The party of the first part shall be allowed, as compensation for his personal services in the conduct of said business, the sum of Eight Thousand ($8000.00) Dollars per annum, to be charged as expenses of said business.

Fourth: The party of the second part is to be allowed to draw the sum of Three Thousand ($3000.00) Dollars per annum or more, payable monthly, provided said sum does not exceed the proportion of net profits accruing to her for such year; if her proportion of the net profits are less than the sum herein named, then she is to be allowed to draw only such sums as would represent the net profits for such year.

Fifth: This agreement shall continue in force for a period of Twenty-five (25) years from the date hereof, unless sooner terminated by the mutual consent of the parties hereto.

Sixth: It is specifically agreed and made an essential part hereof, that this contract and agreement shall not terminate by the death of the party of the second part, except upon the option of the party of the first part. In the event of the death of the party of the second part prior to the termination of this agreement, then it is understood and agreed that the party of the first part is to continue said business, at his option, and under his sole personal supervision and control until the expiration of the term herein provided for, and without being in any manner required to account to or with the heirs, devisees or legatees of the party of the second part until the expiration of the term herein provided for. Upon such expiration, however, then the heirs,

devisees or legatees of the party of the second part or her personal representatives shall receive such interest as would have belonged to the party of the second part had she still been living.

Seventh: In the event of the death of the party of the first part prior to the death of the party of the second part, the party of the second part will relinquish all her right, by way of dower or otherwise, in and to the interest of said party of the first part in the property and assets of the business herein provided for.

This agreement was signed by R. A. Bartley and " Hattie " Bartley, and was witnessed by Charles T. Lewis, the attorney who drew the instrument, and an employee in his office. The original of the agreement had been lost or destroyed but a copy of it satisfactorily identified is in evidence.

Although this agreement states that Harriet Bartley acquired her interest in the business " by her contribution to said business by services and otherwise," she did no work at the place of business of the taxpayer within the knowledge of the bookkeeper since about 1890. The existence of this agreement was known to but few persons. The books of account do not show that Harriet Bartley ever had any interest in the business. When the business was incorporated on January 1, 1921, certain employees were permitted to subscribe for and acquire a number of the shares of stock. The balance of the stock was first issued to R. A. Bartley, and under date of April 29, 1921, an agreement was entered into between R. A. Bartley and " Hattie " Bartley, which provides in part as follows:

THIS AGREEMENT made this 29th day of April, 1921, by and between R. A. BARTLEY and HATTIE BARTLEY, husband and wife, of Toledo, Ohio, WITNESSETH :

(1) The written agreement between the parties entered into on the 10th day of March, 1900 and evidenced by written contract of that date and also the agreement between the parties entered into on the first day of March, 1921, and evidenced by written contract of that date, are and each of them is hereby cancelled and all rights and obligations thereunder are cancelled and released.

(2) The business referred to in said contract of March 10, 1900, as carried on under the name of R. A. Bartley is now being carried on by The R. A. Bartley Company (an Ohio corporation). Common stock of said company to the amount of $805,400 par value has been issued to and is now held by R. A. Bartley; and the parties hereto are desirous of making an arrangement whereby a beneficial ownership of said Hattie Bartley, in one-half of said stock shall be effected and secured to her, subject, however, to the right of said R. A. Bartley during his lifetime to vote said stock for all purposes and exercise all other rights incident thereto; and to make certain other arrangements with reference to their property rights.

(3) In consideration of the premises, it is agreed that said The R. A. Bartley Company shall issue to said R. A. Bartley, as Trustee for said Hattie Bartley, certificates for the full one-half of said stock now held by said R.

A. Bartley, viz,—for the amount of $402,700 par value of stock, to be held by said R. A. Bartley upon the trusts following viz:—

(a) Said R. A. Bartley will account for and pay over to said Hattie Bartley when and as received, all cash dividends paid on said stock so held in trust by him, and will receive and hold in like trust any and all stock dividends which may be declared in respect of said stock so held by him in trust; said trust shall continue during the lifetime of said R. A. Bartley and upon his death shall cease and determine, and thereupon said Hattie Bartley, if she survives him, shall have the right to have stock certificates for the stock so held in trust by R. A. Bartley issued to her directly by said The R. A. Bartley Company. If she does not so survive, then said right shall vest in her legal representatives, which term "legal representatives" as herein used, shall include the executors, administrators, heirs or testamentary beneficiaries of the said Hattie Bartley.

(b) During the continuance of said trust said R. A. Bartley shall have complete and absolute power and right to vote all of said stock at any and all meetings of stockholders of said company in like manner and with like effect as if the same belonged to him absolutely, and exercise all other rights incident thereto; and said Hattie Bartley will not, during the lifetime of said R. A. Bartley, do any act or thing which may in any way interfere with the full exercise of such power by said R. A. Bartley.

(c) Said Hattie Bartley further agrees that if she should die before said R. A. Bartley, said trust shall continue as hereinabove provided, and it is agreed that in such case all cash dividends received by said R. A. Bartley subsequent to the death of said Hattie Bartley shall be paid to her legal representatives.

Prior to 1921, Harriet Bartley was charged upon the taxpayer's books of account with the $3,000 advanced each year to her. At the close of each year the account was closed into the profit and loss account the same as the $8,000 paid each year to R. A. Bartley. The profits of the business for each year were credited to what the bookkeeper called a "stock account." Any loss sustained for any year was debited to that account. No profits were drawn from the business during 1918 and 1919, and for many years prior thereto, except such amounts as were drawn by the taxpayer and his wife as per the agreement made in March, 1900; that is, $3,000 paid each year to Harriet Bartley and $8,000 paid each year to R. A. Bartley. In statements to banks and in commercial transactions there was never any statement made to the effect that anyone had any interest in the business other than R. A. Bartley.

Income-tax returns for the years 1917, 1918, and 1919 were made up for the taxpayer by an accountant whom he believed to be qualified to make such returns. No partnership returns were filed for any year. In his individual returns the taxpayer reported the profits of the business and paid surtaxes accordingly. In his return for 1918, he stated that his wife, Harriet Bartley, was filing a separate return.

She filed such a return but did not include therein any profits from the grocery business and the return showed no tax due. In his income-tax return for 1919, the taxpayer did not state whether Harriet Bartley was filing a separate return or whether he was including in his return any income that was received by or which accrued to her. Harriet Bartley made no income-tax return for 1919, as she was advised, after consultation with the collector of internal revenue of the district in which she lived, that she had no taxable income and, accordingly, that no return was required to be filed.

The taxpayer's inventory at December 31, 1919, was taken upon the basis of cost or market whichever was lower. Shortly after the close of the year there was a slump in the market prices of merchandise and the inventory was reduced in the amount of $43,559.14, which represented 5 per cent of the total. In February or March, 1920, the taxpayer discovered that certain items of merchandise inventoried at December 31, 1919, were worthless. The worthless merchandise was dumped during the year 1920. The merchandise thus dumped was all purchased during the war period or within from one to five years prior to January 1, 1920, and the amount for which such merchandise was inventoried totaled $12,884.95.

## OPINION.

SMITH: Section 218 (a) of the Revenue Act of 1918 provides:

That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year * * *.

Section 224 of the Act requires partnerships to make partnership returns each year. The partnerships contemplated by the taxing statute are "ordinary partnerships." *Burk-Waggoner Oil Association* v. *Hopkins*, 269 U. S. 110.

The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services, and having a community of interest in the profits. *Meehan* v. *Valentine*, 145 U. S. 611, 618. See *Ward* v. *Thompson*, 22 How. 330, 334.

Did the agreement, which was entered into between the taxpayer and his wife on March 10, 1900, create an ordinary partnership between the taxpayer and his wife? We think that it did. The statutes of the State of Ohio provide:

Section 3112. (May contract the same as if unmarried). A husband or wife may enter into any engagement or transaction with the other, or with any other person, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the actions of persons occupying confidential relations with each other. Approved March 19, 1887—Bates Annotated Ohio Statutes, Second Edition.

The basis of a partnership is a contract, and a generally accepted test for determining whether a partnership exists between two individuals is whether they have entered into a contract for the sharing of profits and losses of a business enterprise. The taxpayer and Harriet Bartley undoubtedly entered into such a contract. This was a subsisting valid contract existing between the parties during the years 1918 and 1919. This is shown by the fact that Harriet Bartley was paid each year $3,000 by the wholesale grocery business conducted under the name of R. A. Bartley during each of the years 1918 and 1919, in pursuance of the contract entered into in 1900. It is immaterial that the existence of the partnership was not generally known. Harriet Bartley was, nevertheless, liable as a partner to the same extent that R. A. Bartley was liable. In our opinion the taxpayer and his wife were each required under the Revenue Act of 1918 to file individual income-tax returns of their shares of the profits of the partnership for the years 1918 and 1919.

The second point raised by the appeal is the right of the partnership to reduce its inventory taken upon the basis of cost or market whichever is lower at December 31, 1919, to the extent of certain spoilages discovered of the inventoried goods shortly after the inventory was taken. Upon its books of account, the taxpayer reduced the inventory in the amount of $43,559.14, which represented 5 per cent of the total. At the time the reduction was made, it was apparently the intention of the partnership merely to take care of the decline in prices which had taken place between December 31, 1919, and the date the books were closed for that year, which was some time in February, 1920. The partnership now claims the right to reduce the inventory only to the extent of $13,688.83, of which amount $803.88 represents a reduction in the value of four items of merchandise, namely, Folgers lard at the rate of 2 cents per pound; lima beans at the rate of 75 cents per hundred weight; coffee at the rate of 2 cents per pound; coffee (R. A. B. Special) at the rate of 1 cent per pound; and $12,884.95, the inventory price of certain merchandise found in February or March, 1920, to have spoiled. The spoiled goods consisted principally of cases of canned salmon. At the time the inventory was taken no inspection was made of the particular cases inventoried and the worthlessness of the goods was not discovered until they were prepared for shipment or actually had been shipped. The evidence does not disclose just when these goods were purchased. The evidence is to the effect, however, that they were acquired during the war period and within from one to five years of the date of the determination that they were worthless.

Although the taxing statute permits the deduction from gross income of losses actually sustained during the taxable year, we are

of the opinion that the evidence in this appeal does not clearly show that the loss from spoilage claimed for the year 1919 was actually sustained during that year. All that it does show is that the goods were ascertained during the year 1920 to be worthless and had to be dumped. The goods may have spoiled prior to the year 1919. Indeed, some of them may have become worthless subsequent to December 31, 1919. In the circumstances, we think that the proof of loss within the year 1919 is inconclusive and for this reason the action of the Commissioner in disallowing the reduction in the inventory with respect to the lard, beans, and coffee in the amount of $803.88, and in respect of spoilages discovered during the year 1920 in the amount of $12,884.95 is sustained.

> *Order of redetermination will be entered on 15 days' notice, under Rule 50.*