*878 OPINION.
Saiith:
Section 218(a) of the Bevenue Act of 1918 provides:
That individuals carrying on business in partnership shall be liable for income tax only in their individual capacity. There shall be included in computing the net income of each partner his distributive share, whether distributed or not, of the net income of the partnership for the taxable year * * *.
Section 224 of the Act requires partnerships to make partnership returns each year. The partnerships contemplated by the taxing statute are “ ordinary partnerships.” Burk-Waggoner Oil Association v. Hopkins, 269 U. S. 110.
The requisites of a partnership are that the parties must have joined together to carry on a trade or adventure for their common benefit, each contributing property or services, and having a community of interest in the profits. Meehan v. Valentine, 145 U. S. 611, 618. See Ward v. Thompson, 22 How. 330, 334.
Did the agreement, which was entered into between the taxpayer and his wife on March 10, 1900, create an ordinary partnership between the taxpayer and his wife? We think that it did. The statutes of the State of Ohio provide:
Section 3112. (May contract the same as if unmarried). A husband or wife may enter into any engagement or transaction with the other, or with any other person, which either might if unmarried; subject, in transactions between themselves, to the general rules which control the' actions of persons occupying confidential relations with each other. Approved March 19, 1887— Bates Annotated Ohio Statutes, Second Edition.
*879 The basis of a partnership is a contract, and a generally accepted test for determining whether a partnership exists between two individuals is whether they have entered into a contract for the sharing of profits and losses of a business enterprise. . The taxpayer and Harriet Bartley undoubtedly entered, into such a contract. This was a subsisting valid contract existing between the parties during the years 1918 and 1919. This is shown by the fact that Harriet Bartley was paid each year $3,000 by the wholesale grocery business conducted under the name of R. A. Bartley during each of the years 1918 and 1919, in pursuance of the contract entered into in 1900. It is immaterial that the existence of the partnership was not generally known. Harriet Bartley was, nevertheless, liable as a partner to the same extent that R. A. Bartley was liable. In our opinion the taxpayer and his wife were each required under the Revenue Act of 1918 to file individual income-tax returns of their shares of the profits of the partnership for the years 1918 and 1919.
The second point raised by the appeal is the right of the partnership to reduce its inventory taken upon the basis of cost or market whichever is lower at December 81, 1919, to the extent of certain spoilages discovered of the inventoried goods shortly after the inventory was taken. Upon its books of account, the taxpayer reduced the inventory in the amount of $43,559.14, which represented 5 per cent of the total. At the time the reduction was made, it was apparently the intention of the partnership merely to take care of the decline in prices which had taken place between December 31, 1919, and the date the books were closed for that year, which was some time in February, 1920. The partnership now claims the right to reduce the inventory only to the extent of $13,688.83, of which amount $803.88 represents a reduction in the value of four items of merchandise, namely, Folgers lard at the rate of 2 cents per pound; lima beans at the rate of 75 cents per hundred weight; coffee at the rate of 2 cents per pound; coffee (R. A. B. Special) at the rate of 1 cent per pound; and $12,884.95, the inventory price of certain merchandise found in February or March, 1920, to have spoiled. The spoiled goods consisted principally of cases of canned salmon. At the time the inventory was taken no inspection was made of the particular cases inventoried and the worthlessness of the goods was not discovered until they were prepared for shipment or actually had been shipped. The evidence does not disclose just when these goods were purchased. The evidence is to the effect, however, that they were acquired during the war period and within from one to five years of the-date of the determination that they were worthless.
Although the taxing statute permits the deduction from gross income of losses actually sustained during the taxable year, we are *880 of the opinion that the evidence in this appeal does not clearly show that the loss from spoilage claimed for the year 1919 Avas actually sustained during that year. All that it does show is that the goods were ascertained during the year 1920 to be worthless and had to be dumped. The goods may have spoiled prior to the year 1919. Indeed, some of them may have become worthless subsequent to December 31, 1919. In the circumstances, we think that the proof of loss within th'é year 1919 is inconclusive and for this reason the action of the Commissioner in disallowing the reduction in the inventory with respect to the lard, beans, and coffee' in the amount of $803.88, and in respect of spoilages discovered during the year 1920 in the amount of $12,884.95 is sustained.

Order of redeterrmnation will be entered on 15 days’ notice, under Rule 50.