Ch. ECONOMU and George Birbilis, Libelants,

v.

George T. BATES, George T. Bates & Co., Inc., and Conestoga Carriers Corporation, Respondents.

United States District Court
S. D. New York.

Oct. 23, 1963.

Poles, Tublin & Patestides, New York City, for libelants; John G. Poles, New York City, of counsel.

Taylor, Scoll, Ferencz & Simon, New York City, for respondents; David E. Scoll, New York City, of counsel.

WEINFELD, District Judge.

Respondents move, pursuant to Rule 27 of the Rules of Practice in Admiralty and Maritime Cases, to dismiss the libel in personam and to vacate the writ of foreign attachment issued against the vessel Diana B, owned by the respondent Conestoga Carriers Corp., upon the ground that the claims asserted are not maritime and so beyond the admiralty jurisdiction of the Court.[1]

The first cause of action alleges that libelants entered into an agreement with the individual and corporate respondent whereby the respondents would purchase and operate the S/S Diana B; that libelants "would contribute certain monies" toward the purchase and become owners and operators with the respondents of the vessel; that freight moneys earned and collected from its ownership and operation would be shared by libelants and respondents; that pursuant to the agreement, libelants paid to respondents "certain sums of money" for the purchase and operation of the vessel; that thereafter respondents purchased the S/S Diana B in the name of Conestoga Carriers Corp., the corporate respondent; that the respondents received and collected various sums as profit and freight money from the operation of the vessel, but that they wrongfully withheld and misappropriated libelants' share of the freight moneys and profits.

In the second cause of action libelants repeat the allegations of the first and, in addition, allege that upon payment of $20,000 they were to become owners and operators with respondents of the S/S Diana B, and if she were purchased in the name of the corporate respondents, certificates evidencing ownership of fifty per cent of the stock of the corporation were to be issued and delivered to libelants. They allege payment and due performance of the terms and conditions of the agreement. Under the first cause of action libelants seek a money judgment in the sum of $100,000, and under the second, the issuance of fifty per cent of the stock of the corporation.

 If the agreement as alleged is maritime, there is jurisdiction; if not, there is none. The fact that the libel alleges that freight moneys derived from the operation of a vessel were to be shared by libelants and respondents and have been collected and misappropriated by the respondents, or that libelants have endorsed their libel as one "for freight monies and enforcement of vessel purchase agreement," is not controlling. Admiralty is concerned not with isolated self-serving allegations or the form of the action, but with its substance.[2] The fundamental issue of whether the contract sued upon is maritime is governed by the nature and subject matter of the contract.[3] Fairly read, the libel in substance alleges an agreement whereby libelants were to contribute to the financing and to become co-owners with respondents on an equal basis of a vessel yet to be purchased. The means by which title to the vessel was to be evidenced was left open. This is emphasized

---

1. The motion was originally made but not decided in the Northern District of California, Southern Division, where the action was commenced and the vessel seized under the attachment. The action was transferred to this District, where the motion was renewed. Prior to transfer, the respondent had deposited with the California court 50% of the shares of stock of Conestoga Carriers Corp., the subject of the second cause of action, and also had filed a bond in the sum of

$25,000 in order to obtain the release of the vessel.

2. Archawski v. Hanioti, 350 U.S. 532, 533, 76 S.Ct. 617, 100 L.Ed. 676 (1956); Krauss Bros. Lumber Co. v. Dimon S.S. Corp., 290 U.S. 117, 124, 54 S.Ct. 105, 78 L.Ed. 216 (1933).

3. New England Mutual Marine Insurance Co. v. Dunham, (11 Wall.) 78 U.S. 1, 27, 20 L.Ed. 90 (1870).

by the second cause of action wherein it is alleged that "if said vessel were purchased in the name of respondent, CONESTOGA CARRIERS CORP.," the libelants were to receive fifty per cent of the corporate stock.[4]

■ The basic agreement is one of joint enterprise between the libelants and the respondents, and the fact that it may be carried on nominally in corporate form does not affect its essential character. The parties, if we accept, as we must, the allegations of the libel as true, have agreed to purchase a vessel and thereafter to operate her for their mutual benefit; the profits were to be shared whether the operation was in the name of one or more individuals or through a corporate entity. This is the essence of their arrangement. Otherwise, if the libel is strictly construed, the libelants are stockholders to whom their shares have not been issued and, in major part, are asserting a derivative claim on behalf of the corporation[5] or to compel the declaration of a dividend. Nor is the basic nature of the contract affected or changed merely because it is a maritime venture and relates to maritime activities. The Supreme Court, in holding that an agreement to form a steamship line under which passenger and freight income was to be divided was not maritime, stated:

"This is nothing more than an agreement for a special and limited partnership in the business of transporting freight and passengers between New York and San Francisco, and the mere fact that the transportation is by sea, and not by land, will not be sufficient to give the court of admiralty jurisdiction of an action for a breach of the contract."[6]

The instant agreement is to be distinguished from one where an owner of a vessel engages another to manage or operate her, admittedly maritime,[7] and where an accounting is incidental to admiralty's independent jurisdiction and necessary for the adjustment of the rights of the parties.[8] Here the accounting of the freight moneys and profits is prime and not incidental. What the Court is called upon to determine is the existence *vel non* of the claimed agreement for the joint purchase and operation of the vessel and the terms thereof. It is that arrangement which is the subject matter of the libel.

4. Libelants' proctors summarize the libel as follows: "The Libellants * * * entered into an oral agreement with respondents * * * whereby for the sum of $20,000 to be paid by the Libelants to the respondent[s] * * * toward the purchase, charter, supply, management, and operation of said vessel * * * libelants were to receive Fifty Per Cent of the stock of CONESTOGA CARRIERS CORPORATION, the owner of the vessel and resultant share of the freights from the management and operation of the vessel."

5. In fact, libelants had commenced an action in the New York State Supreme Court charging the respondents herein and one other with the waste and diversion of corporate assets, and demanded an accounting to the corporation. The action was discontinued, following which the libel was commenced in the District Court of California. See note 1 supra.

6. Vandewater v. Mills, 60 U.S. (19 How.) 82, 92, 15 L.Ed. 554 (1856). Accord, Ward v. Thompson, 63 U.S. (22 How.) 330, 16 L.Ed. 249 (1859). See also, Grant v. Poillon, 61 U.S. (20 How.) 162, 15 L. Ed. 871 (1857). Cf. The Pennsylvania, 154 Fed. 9 (2d Cir. 1907).

7. The Supreme Court itself made this distinction in Ward v. Thompson, 63 U.S. (22 How.) 330, 16 L.Ed. 249 (1859) where it said: "The only characteristics of a charter-party to be found in this contract are, that the subject of it is a ship, and that libelants are owners. There is no letting or hiring of the ship to the respondent for a given voyage, to be employed by him for his own profit. * * * Here we have everything necessary to constitute a partnership." Id. at 333–334.

8. See Hadjipateras v. Pacifica, S.A., 290 F.2d 697 (5th Cir. 1961). Libelants rely heavily on this case which, however, is distinguishable from the case at bar, since the agreement there was one whereby the owner had engaged another to manage and operate the vessel.

It may be argued that the distinction between an agreement to purchase and operate a vessel on a partnership or joint venture basis, and one whereby an owner engages another to operate her, is rather refined—but no more so than the difference between a contract to construct a vessel and one to rebuild or repair a vessel. And yet it is not open to question that the former is not a maritime contract,[9] whereas the latter is.[10] The dividing line between maritime and nonmaritime claims is not always sharply defined.[11] Thus, a contract for the charter of a vessel is maritime in nature, whereas a contract creating an agency to obtain charterings has been held nonmaritime.[12] Also, a contract for the sale of a vessel has been held to be nonmaritime.[13] Therefore, it is difficult to see on what basis the purchase of a half interest in a vessel constitutes a maritime contract. And so, too, if a court of admiralty is without power, as the Supreme Court has stated, to entertain a libel to "declare * * * [a ship] to be the property of the mortgagees and direct possession of her to be given to them,"[14] it is also without jurisdiction to declare one a half owner of a vessel and to direct the delivery of stock certificates evidencing such 50% ownership.[15]

Since the underlying transaction sued upon is one of joint venture or partnership and the principal relief sought is an accounting of profits arising out of the enterprise, it is not maritime and is beyond admiralty jurisdiction. It has long been the law, as stated by Judge L. Hand, "that a court of admiralty will not entertain a suit for an accounting as such: as, for example, an accounting between co-owners of a vessel, or between maritime adventurers, or between principal and agent, and so on."[16] The libelants, recognizing the force of earlier Supreme Court holdings in Vandewater v. Mills[17] and Ward v. Thompson,[18] upon which Judge Hand's statement was based, argue that they are relics of the old English "locality test" of admiralty jurisdiction, the rationale of which has given way to the "subject matter" test. In urging that these old authorities have been shorn of their vitality, libelants, point to a series of recent Supreme Court rulings which indeed widened horizons of admiralty jurisdiction.[19] However, libelants' position is without support. First, even prior to the decisions in the Vandewater and Ward cases, which held

9. Thames Towboat Co. v. The "Francis McDonald," 254 U.S. 242, 41 S.Ct. 65, 65 L.Ed. 245 (1920); People's Ferry Co. v. Beers, 61 U.S. (20 How.) 393, 15 L. Ed. 961 (1857).

10. New Bedford Dry Dock Co. v. Purdy, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922).

11. Kossick v. United Fruit Co., 365 U.S. 731, 735, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961); 1 Benedict on Admiralty 130 (6th ed. 1940).

12. See Cory Bros. & Co. v. United States, 51 F.2d 1010, 1012 (2d Cir. 1931) and cases there cited.

13. The Ada, 250 Fed. 194, 196 (2d Cir. 1918).

14. Rea v. The Eclipse, 135 U.S. 599, 608, 10 S.Ct. 873, 34 L.Ed. 269 (1890).

15 See Stathos v. The Maro, 134 F. Supp. 330 (E.D. Va. 1955).

16. W. E. Hedger Transp. Corp. v. Ira S. Bushey & Sons, Inc., 155 F.2d 321, 323

(2d Cir.), cert. denied, 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635 (1946).

17. 60 U.S. (19 How.) 82, 15 L.Ed. 554 (1856).

18. 63 U.S. (22 How.) 330, 16 L.Ed. 249 (1859).

19. Sword Line, Inc. v. United States, 351 U.S. 976, 76 S.Ct. 1047, 100 L.Ed. 1493 (1956) (mem.) (admiralty jurisdiction in quasi contract upheld); Archawski v. Hanioti, 350 U.S. 532, 76 S.Ct. 617, 100 L.Ed. 676 (1956) (libel for moneys wrongfully withheld allowed); Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A., 339 U.S. 684, 70 S.Ct. 861, 94 L.Ed. 1206 (1950) (admiralty court allowed to set aside fraudulent transfer in attachment proceedings); Krauss Bros. Lumber Co. v. Dimon S.S. Corp., 290 U. S. 117, 54 S.Ct. 105, 78 L.Ed. 216 (1933) (lien for erroneous overpayment of freight allowed in admiralty).

that an agreement to enter into a joint venture or partnership to operate a vessel was not a maritime agreement, the Supreme Court expressly rejected the English locality rule in determining the contours of admiralty jurisdiction under the Federal Constitution and the Judiciary Act of 1789.[20] Indeed, some years later, when persistent counsel endeavored to persuade the Court that it erred in its position that American admiralty jurisdiction was not circumscribed by the English locality test, the Court not only adhered to its view, but admonished counsel, "on the question *now* (it is hoped for the last time) mooted before us."[21]

Second, and more persuasively, Judge Hand's statement in the Hedger case

cited among other authorities the Vandewater and Ward cases. The Supreme Court in turn recently cited Judge Hand's statement with approval in Swift & Co. Packers v. Compania Colombiana Del Caribe, S.A.,[22] as did the Fifth Circuit in Hadjipateras v. Pacifica, S.A.,[23] the case libelants claim is authority in their favor. In view of these references to the Vandewater and Ward principles in recent cases, which themselves rejected notions of restricted admiralty jurisdiction, the contention that the principles are outmoded is without substance.

The motion to dismiss for want of jurisdiction is granted and the writ of foreign attachment and all action which followed thereunder is vacated.

20. New Jersey Steam Nav. Co. v. Merchants' Bank, 47 U.S. (6 How.) 344, 12 L.Ed. 465 (1848).

21. Morewood v. Enequist, 495, 64 U.S. (23 How.) 491, 495, 16 L.Ed. 516 (1859). See comment by Gilmore & Black, The Law of Admiralty 21 n.65 (1957): "Counsel in this case [Morewood] tried yet again to persuade the court to back-

track and accept the theory that the American admiralty jurisdiction was to be defined in terms of the English view. By this time, the court is getting a bit testy, and speaks of the issue before it as '[hopefully mooted.]' "

22. 339 U.S. 684, 692–693, 70 S.Ct. 861, 94 L.Ed. 1206 (1950).

23. 290 F.2d 697 (5th Cir. 1961).