VERA, INC. in its own right and as managing joint venturer of a joint venture between Vera, Inc. and William Deakin, Plaintiff,

v.

The TUG "DAKOTA" or "MISS NATALIE" a vessel of 127 gross tons, registration no. 636565, its engines, tackle and fixtures, William Deakin and Anthony Mangone, Defendants.

No. 91–CV–1981.

United States District Court,
E.D. New York.

July 1, 1991.

John F. McHugh, New York City, for plaintiff.

John A. Clifford, Lynbrook, N.Y., for defendants.

## MEMORANDUM AND ORDER

BARTELS, District Judge.

Plaintiff Vera, Inc. ("Vera") commenced this action in admiralty, naming the vessel "Dakota", its engines, tackle and fixtures, its registered owner, William Deakin, and Anthony Mangone, an individual alleged to have a financial interest in the vessel as defendants (individually "the Dakota" or "vessel", "Deakin", "Mangone", and collectively the "defendants"). The focal point of the law suit is the alleged breach of an oral joint venture agreement between Vera and Deakin concerning the repair, operation and sale of the Dakota.[1] Vera seeks (1) a permanent injunction requiring specific performance of the joint venture agreement; (2) an accounting of the joint venture and an order for the arrest and sale of the vessel; (3) damages for breach of the joint venture agreement; and (4) expungement of Mangone's interest in the Dakota.

There are two motions pending before the Court. First, Vera's motion for a preliminary injunction directing Deakin to refrain from further interfering with Vera's possession and management of the Dakota until such time as the joint venture is formally dissolved; and second, defendants' cross motion to dismiss the complaint because the Court lacks admiralty jurisdiction over the subject matter,[2] and to declare Vera's maritime lien invalid.

## BACKGROUND

In 1986 Deakin and Mangone purchased the tug "Miss Natalie," which was subse-

1. The Court also has before it an action commenced in Supreme Court of the State of New York, County of Queens by William R. Deakin against Vera, Inc. and Herm Rotsmer [sic], individually and as an officer of Vera, Inc., seeking, among other things, dissolution of the joint venture and an accounting, and removed to this Court pursuant to 28 U.S.C. § 1441(a).

2. Apparently, however, there is no dispute that 28 U.S.C. § 1332 provides an alternative basis for this Court's jurisdiction since plaintiff and defendants are citizens of different states—New Jersey and New York, respectively—and the amount in controversy exceeds $50,000.

quently renamed the "Dakota." Deakin then caused the Dakota to be towed to New York Harbor, whereupon he duly registered the vessel in his name.

In September 1989, Deakin and Vera (the "parties") orally entered into a joint venture whereby they agreed to repair and restore the Dakota which, at the time, was a mere hulk. Towards that goal it was agreed that the parties would share in the cost of the restoration and that Vera would provide the bulk of the labor. Vera alleges that in the course of restoring the Dakota it invested $181,444.46. Deakin and Mangone claim to have invested $240,000.00. Furthermore, as part of the joint venture the parties agreed that after the vessel was restored the Dakota would trade in the spot market, Vera would manage the vessel, and the parties would evenly split the profits. Finally, as part of the joint venture the parties agreed that Vera would purchase the vessel, pay for it out of its share of the profits of the joint venture; however, no price was ever established.

Restoration of the Dakota to serviceable condition took longer than expected, but in November of 1990 the vessel began to operate in the spot market doing towing work exclusively for Mobil Oil Company ("Mobil"). Vera alleges that the joint venture was successful, noting that from November 20, 1990, through April 22, 1991, the Dakota grossed $281,520.55, from which Deakin received payments totalling $41,000.00. On the other hand, the defendants claim that Mobil did not have enough work to make the venture profitable and that Vera unreasonably refused to accept other towing jobs.

On May 27, 1991, Deakin boarded the Dakota, which was then berthed at Vera's pier in the Port of Perth Amboy, New Jersey, took control of the vessel and sailed her to Newtown Creek in Brooklyn, New York, where the vessel remains docked.[3] The parties offer different theories, which need not be explored at this time, as to why Deakin terminated the operation of the joint venture and removed the management of the Dakota from Vera's control.

## DISCUSSION

### I. *Plaintiff's Motion for a Preliminary Injunction*

■ Courts of admiralty have capacity to apply equitable principles; however, they do not have, except in limited circumstances, the power to issue injunctions. *See Schoenamsgruber v. Hamburg American Line*, 294 U.S. 454, 55 S.Ct. 475, 79 L.Ed. 989, *reh'g denied*, 294 U.S. 734, 55 S.Ct. 635, 79 L.Ed. 1263 (1935); *China Trade and Dev. Corp. v. M.V. Choong Yong*, 837 F.2d 33, 35 (2d Cir.1987); *Eddie S.S. Co. v. P.T. Karana Line*, 739 F.2d 37, 38–39 (2d Cir.), *cert. denied*, 469 U.S. 1073, 105 S.Ct. 568, 83 L.Ed.2d 508 (1984). Moreover, while recognizing that other circuits have broadened the traditionally circumscribed powers of the court in admiralty, the Second Circuit has refused to do so. *See China Trade*, 837 F.2d at 35; *Eddie S.S. Co.*, 739 F.2d at 39. Inasmuch as Vera commenced this action in admiralty the Court lacks the authority to grant the relief requested in admiralty.

■ Alternatively, even if this suit had been commenced in law the Court would not, for the following reasons, grant Vera's request for a preliminary injunction. " 'A preliminary injunction is an extraordinary remedy that should not be granted as a routine matter[ ]' ", *Firemen's Ins. Co. v. Keating*, 753 F.Supp. 1146, 1149 (S.D.N.Y.1990) (quoting *JSG Trading Corp. v. Tray–Wrap, Inc.*, 917 F.2d 75, 80 (2d Cir.1990)); *Patton v. Dole*, 806 F.2d 24, 28 (2d Cir.1986); *Medical Soc'y v. Toia*, 560 F.2d 535, 538 (2d Cir.1977); *Diversified Mortgage Investors v. U.S. Life Title Ins. Co.*, 544 F.2d 571, 576 (2d Cir.1976), and "it should not be used as a device for ... deciding questions of contract breach, properly determinable after trial." *Diversified Mortgage Investors*, 544 F.2d at 576 (citing

---

**3.** On Friday, June 7, 1991, the Court signed a warrant directing that the U.S. Marshals Service seize the Dakota and take it to a substitute custodian. The seizure was never effected because the Dakota was surrounded by other ships that refused to move to allow Marine's tug access to the Dakota. Subsequently, the Court stayed the arrest warrant.

*Unicon Management Corp. v. Koppers Co.,* 366 F.2d 199, 204 (2d Cir.1966)).

■ Furthermore, it is well established in this Circuit that in order to obtain a preliminary injunction a party must demonstrate both irreparable harm and a likelihood of success on the merits or a sufficiently serious question regarding the merits to make them a fair ground for litigation with the balance of hardships tipping decidedly in its favor. *JSG Trading,* 917 F.2d at 79; *Tucker Anthony Realty Corp. v. Schlesinger,* 888 F.2d 969 (2d Cir.1989); *Mattel, Inc. v. Azrak–Hamway Int'l, Inc.,* 724 F.2d 357, 359 (2d Cir.1983); *Jackson Dairy, Inc. v. H.P. Hood & Sons, Inc.,* 596 F.2d 70, 72 (2d Cir.1979). "A *sine qua non* for the grant of preliminary relief is irreparable harm." *Stromfeld v. Smith,* 557 F.Supp. 995, 998 (S.D.N.Y.1983) (citing *United States Postal Service v. Brennan,* 579 F.2d 188, 191 (2d Cir.1978)); *Litho Prestige v. News America Pub., Inc.,* 652 F.Supp. 804, 809 (S.D.N.Y.1986). With respect to irreparable harm, the Supreme Court in *Sampson v. Murray,* 415 U.S. 61, 94 S.Ct. 937, 39 L.Ed.2d 166 (1974), stated

"The key word in this consideration is irreparable. Mere injuries, however substantial, in terms of money, time and energy necessarily expended in the absence of a stay are not enough. The possibility that adequate compensatory or other corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm."

■ Furthermore, to establish irreparable harm the injury must be actual and imminent, not remote or speculative, *Tucker,* 888 F.2d at 975; *Consolidated Brands, Inc. v. Mondi,* 638 F.Supp. 152, 155 (E.D.N.Y.1986). Moreover, where an injury is compensable through money damages there is no irreparable harm. *JSG Trading,* 917 F.2d at 79; *Jackson Dairy,* 596 F.2d at 72; *Railroad P.B.A., Inc. v. Metro-N. Commuter R.R.,* 699 F.Supp. 40, 43 (S.D.N.Y.1988). In addition, if the wrongful activity threatens only the disruption as opposed to the destruction of an ongoing business there is no irreparable injury.

*USA Network v. Jones Intercable, Inc.,* 704 F.Supp. 488, 491 (S.D.N.Y.1988) (citing *John B. Hull v. Waterbury Petroleum,* 588 F.2d 24, 28–29 (2d Cir.1978), *cert. denied,* 440 U.S. 960, 99 S.Ct. 1502, 59 L.Ed.2d 773 (1979); *Newport Tire & Rubber v. Tire & Battery,* 504 F.Supp. 143, 150 (E.D.N.Y.1980)). Thus, where the viability of a business is not threatened and monetary damages is adequate compensation a preliminary injunction will not issue. *Jackson Dairy,* 596 F.2d at 72; *Firemen's Ins. Co.,* 753 F.Supp. at 1151.

■ Vera alleges that as a consequence of Deakin's unilateral actions of May 27, 1991, Deakin has thwarted the purpose of the joint venture and breached the joint venture agreement. Vera seeks to maintain the *status quo* by means of a preliminary injunction ordering Deakin to restore to it (Vera) the management of the Dakota so that the vessel can resume trading in the spot market pending an accounting and the formal dissolution of the joint venture.

There is no dispute that Vera has satisfied the first prong of the test, to wit, that the injury is imminent and actual. The Dakota was scheduled to tow barges for Mobil on May 29, 1991, a job which had to be cancelled when the vessel was removed from operation. Clearly, the joint venture, and consequently Vera, has suffered a loss of income as a result of Deakin's commandeering the Dakota and docking her in Newtown Creek.

Vera, however, has not satisfied the second prong of the test—it has not demonstrated that any injury it sustains cannot be redressed with money damages. Vera does not argue that the very existence of the business is threatened by Deakin's conduct. Rather, Vera argues that it will be irreparably harmed because there is no easy way to calculate the income lost to the joint venture by removing the Dakota from operation. The amount, Vera claims, is difficult to ascertain because the Dakota has no contracts and trades on the spot market. However, "the mere necessity of making an informed approximation of damages should not preclude the adequacy of a legal remedy." *Rosenfeld v. W.B. Saun-*

*ders,* 728 F.Supp. 236, 244 (S.D.N.Y.1990); *USA Network,* 704 F.Supp. at 493. The error in Vera's argument is apparent from a review of the affidavit filed by Herm Rotsma ("Rotsma"), Vera's president, in support of Vera's motion where Rotsma avers that the joint venture lost four business opportunities between the period May 29 and June 10, 1991. Specifically, on May 29, the Dakota lost a $5,000.00 voyage to Mount Vernon on behalf of Mobil; on May 31, the Dakota lost a $7,000.00 voyage to Cold Spring Harbor on behalf of Mobil; and commencing June 1, the Dakota could have been operating daily, replacing Mobil's tug "9", at a rate of $3,800.00 per day. In addition, by virtue of Deakin's withdrawing the Dakota from service the joint venture lost an opportunity to work continuously on June 5, 6, and 10, 1991, docking vessels in New York's port for clients other than Mobil. The fee for this work was $300.00 per hour.[4] Furthermore, the damages suffered by Vera, if it is shown that Deakin breached the terms of the joint venture agreement by idling the Dakota in Newtown Creek pending the dissolution of the joint venture and an accounting, can be calculated by extrapolating the earnings of the vessel while the joint venture was operating.

██ Vera's failure to establish irreparable harm is itself sufficient to deny its motion, however, this Court also finds that Vera can not establish its likelihood of success on the merits. The propriety of injunctive relief is also a function of the nature of the rights being enforced. In contract cases, injunctive relief, both interlocutory and final, is the exception and not the rule, and the specific performance remedy "remains largely limited to contracts where the traditional remedy of damages is inappropriate because the unusual goods or services involved are difficult to value." *Litho Prestige,* 652 F.Supp. at 809; *USA Network,* 704 F.Supp. at 491. Moreover, "specific performance is particularly undesirable and impractical where it would force essentially hostile parties into an ongoing, active business relationship." *Id.*

The instant case presents the quintessential picture of a business relationship, involving only two principals who must of necessity maintain close ties, gone sour. The record before this Court is rife with allegations, by both sides, of bad faith and distrust. Consequently, since, in this case, "success on the merits," equates with specific performance of the joint venture agreement, it is unlikely that Vera will prevail.

Finally, assuming *arguendo,* a serious question regarding the merits Vera has not demonstrated that the balance of hardships, should the preliminary injunction not issue, tips in its favor. As equal partners in the joint venture with Deakin, Vera stands to suffer no greater harm than Deakin as a result of the Dakota being idled.

In short, the Court finds that Vera, in this ordinary breach of contract claim, has failed to convince the Court that it will suffer irreparable harm if the preliminary injunction does not issue, or that it is likely to succeed in its claim on the merits. Accordingly, Vera's motion for a preliminary injunction is denied.

## II. *Defendants' Motion To Dismiss*

Plaintiff asserts that the Court has admiralty jurisdiction over this contract dispute pursuant to 28 U.S.C. § 1333 which provides, in pertinent part, that "[t]he district courts shall have original jurisdiction ... of: (1) Any civil case of admiralty or maritime jurisdiction...."

██ If the contract is a maritime contract, it is within the court's admiralty jurisdiction. *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56, *reh'g denied,* 366 U.S. 941, 81 S.Ct. 1657, 6 L.Ed.2d 852 (1961); *CTI–Container Leasing Corp. v. Oceanic Operations Corp.,* 682 F.2d 377, 379 (2d Cir.1982). Whether or not a contract action falls within the court's admiralty jurisdiction depends on the subject matter of the contract. *Ziegler v. Rieff,* 637 F.Supp. 675 (S.D.N.Y.1986). A contract that relates to a ship in its use as such, or to commerce or

---

**4.** Affidavit of Herm Rotsma dated June 12, 1991    at ¶ 15.

navigation in navigable waters, or to transportation by sea or to maritime employment is subject to maritime law and the case is one of admiralty jurisdiction. *CTI–Container Leasing*, 682 F.2d at 379; *Luckenbach S.S. Co. v. Coast Mfg. & Supply Co.*, 185 F.Supp. 910, (E.D.N.Y.1960); *see generally* 1 S. Friedell, *Benedict on Admiralty* § 182, at 12–4 (7th ed. 1989).

Although, determining whether a contract is a maritime contract is sometimes a thorny proposition, it is well settled that a contract to repair or rebuild a ship is maritime, *New Bedford Dry Dock Co. v. Purdy*, 258 U.S. 96, 42 S.Ct. 243, 66 L.Ed. 482 (1922); *accord Economu v. Bates*, 222 F.Supp. 988 (S.D.N.Y.1963); *see generally* 1 S. Friedell, *Benedict on Admiralty* § 187 at 12–36 (7th ed. 1989), but a contract for the sale of a ship is not. *The Ada*, 250 Fed. 194, 196 (2d Cir.1918); *International Shipping Co., S.A. v. Hydra Offshore, Inc.*, 675 F.Supp. 146, 150 (S.D.N.Y.1987), *aff'd*, 875 F.2d 388 (2d Cir.1989); *Economu, Id.; see generally* 1 S. Friedell, *Benedict on Admiralty* § 186 at 12–30. Furthermore, an admiralty court does not have jurisdiction to compel the specific performance of a contract to purchase a vessel. *Richard Bertram & Co. v. The Yacht, Wanda*, 447 F.2d 966, 967 (5th Cir.1971); *The Guayaquil*, 29 F.Supp. 578 (E.D.N.Y.1939).

A century ago the Supreme Court held that admiralty jurisdiction extends only to wholly maritime contracts. *The Eclipse*, 135 U.S. 599, 10 S.Ct. 873, 34 L.Ed. 269 (1890). This restriction has been modified over time. Judge Learned Hand held in *Compagnie Francaise de Navigation a Vapeur v. Bonnasse*, 19 F.2d 777 (2d Cir.), *cert. denied*, 275 U.S. 551, 48 S.Ct. 114, 72 L.Ed. 421 (1927), that the mere fact that a contract encompasses both maritime and non-maritime subject matter does not preclude the court from exercising its admiralty jurisdiction. If the maritime provisions can be separately enforced without prejudice to the other provisions, admiralty may take jurisdiction and enforce them. *Id.* at 779; *Natasha, Inc. v. Evita Marine Charters, Inc.*, 763 F.2d 468 (1st Cir.1985).

The joint venture agreement at issue had three provisions—(1) the repair, (2) the operation, and (3) the sale of the Dakota. The repair and operation components are maritime contracts; however, the agreement to sell the ship is not.

The maritime provision regarding the operation of the Dakota is not readily separable from the non-maritime provision regarding the sale of the vessel. Vera argues that according to the terms of the agreement the joint venture was to endure long enough for Vera to purchase the vessel out of its share of the profits of the operation. Unlike the *Natasha*, where the court found that the contracts for the charter and sale of a vessel were separable, this Court finds that the contracts for the operation and the sale of the Dakota are inexorably intertwined. Accordingly, although the contract for the operation of the Dakota is maritime, the Court's admiralty jurisdiction, with respect to that contract, is defeated by the fact that that contract is not readily separable from the contract for the sale of the Dakota, a non-maritime contract. The contract for the repair of the Dakota is a maritime contract and is distinguishable from the contract for the Dakota's sale, however, "a court of admiralty will not entertain a suit for an accounting between co-owners of a vessel, or between maritime adventurers, or between principal and agent, and so on." *W.E. Hedger Transp. Corp. v. Ira S. Bushey & Sons*, 155 F.2d 321, 323 (2d Cir.), *cert. denied*, 329 U.S. 735, 67 S.Ct. 100, 91 L.Ed. 635 (1946) (citations omitted); *Economu*, 222 F.Supp. at 991 (where the underlying transaction sued upon is one of joint venture or partnership and the principal relief sought is an accounting of profits arising out of the enterprise, it is not maritime and is beyond admiralty jurisdiction). With respect to the controversy regarding the contract for the repair of the Dakota the principal relief sought is simply an accounting between co-adventurers. Thus, the Court's admiralty jurisdiction is defeated.

### III. *Plaintiff's Maritime Lien*

Joint venturers are not entitled to a maritime lien for furnishing supplies, re-

pairs or labor. *Fathom Expeditions, Inc. v. M/T Gavrion,* 402 F.Supp. 390, 397 (M.D.Fla.1975); *accord P.T. Perusahaan Pelayaran Samundera Trikora Lloyd v. T.S. Salzachtal,* 373 F.Supp. 267 (E.D.N.Y.1974). "[A] part owner or joint venturer with the owner ... has no [maritime] lien upon the theory that such persons are not strangers to the vessel who have relied on the security of the ship but have rather relied on the credit of the owner...." *P.T. Perusahaan,* 373 F.Supp. at 275. Vera readily admits that it was a joint venturer when it furnished labor and services to repair the Dakota. Accordingly, its maritime lien is invalid.

## CONCLUSION

Plaintiff's motion for a preliminary injunction is denied because courts sitting in admiralty lack the power to issue injunctions and, alternatively, even if this were an action at law a preliminary injunction would not issue because any harm suffered by Vera will be adequately remedied by an award of monetary damages.

Defendants' motion to dismiss the complaint because the Court lacks admiralty jurisdiction over the subject matter is granted because (1) the contract for the sale of the Dakota is not a maritime contract; (2) although the contract for the operation of the Dakota is a maritime contract it is not separable from the non-maritime contract for sale; (3) the principal relief sought by Vera, a co-venturer on its claim for breach of the agreement to repair the vessel, is an accounting; and (4) Vera's maritime lien for repairs is invalid.

Finally, the Court retains jurisdiction over the complaint pursuant to 28 U.S.C. § 1332.

SO ORDERED.