**LYNNHAVEN DOLPHIN CORP., et al., Plaintiffs-Appellees,**

v.

**E.L.O. ENTERPRISES, INC., et al., Defendants-Appellants.**

No. 84–3568
Summary Calendar.

United States Court of Appeals,
Fifth Circuit.

Nov. 15, 1985.

Horne, Higgins & Higgins, Joe L. Horne, George J. Higgins, Jr., New Orleans, La., for defendants-appellants.

Terriberry, Carroll, Yancey & Farrell, G. Edward Merritt, New Orleans, La., for plaintiffs-appellees.

Before RUBIN, JOHNSON and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

The buyer of a ship alleges that its own agent and the seller are guilty of collusion to perpetrate a fraud on the buyer that resulted in the buyer paying $175,000 for a ship not worth more than $45,000. Judgment was entered against the seller and the buyer's agent in the sum of $204,-221.61, plus interest from the date of judicial demand, attorneys' fees stipulated at $28,760, and maintenance of the vessel from the date of judicial demand at two dollars per day. The seller appeals. We are asked to decide whether the evidence supports the district court's determinations that the defendants are guilty of fraud and that the plaintiff is entitled to rescission of the sale plus expenses incurred in transporting and maintaining the vessel. Because we find ample evidence to support the district judge's findings, the judgment is AFFIRMED. Further, because this appeal is frivolous, we assess double costs in favor of appellee.

## I. THE PROCEDURAL BACKGROUND.

Swann Oil, Inc. (Swann Oil), plaintiff, is a Pennsylvania corporation with principal offices in Bala Cynwyd, Pennsylvania. Its president is Leonard Swann (Swann). Swann Oil deals primarily in oil and coal importing and marketing. Through its wholly owned subsidiary, Lynnhaven Dolphin Corporation (Lynnhaven), Swann Oil also runs a launch crewboard operation servicing coal carriers anchored in the harbor of Norfolk, Virginia. Lynnhaven is a Virginia corporation with principal offices in Bala Cynwyd, Pennsylvania, and is also a plaintiff.

Plaintiffs filed suit against E.L.O. Enterprises, Inc. (E.L.O.) and its president and sole stockholder, Elvin L. Oglesby, for alleged breach of warranty of title in the sale of the passenger ship M/V DOLPHIN to plaintiffs. Oglesby is domiciled in Jefferson Parish, Louisiana. Plaintiffs also sought recovery from Brabham Hester, who was Swann Oil's manager for marine operations as well as Swann Oil's agent in the purchase of the ship, for fraudulent misrepresentation and breach of duty of his agency relationship. Hester's wife, Anne, was also named as defendant, as was Carolina Fuels, Inc., a closely held corporation organized by Hester and his wife at about the time Hester left the employment of Swann Oil. Carolina Fuels is a South Carolina corporation dealing in energy-related transactions; its principal offices are in Newberry, South Carolina.

A dismissal was granted to defendant Anne Hester at the close of plaintiffs' case.

Defendants Brabham Hester and Carolina Fuels have not appealed. Defendants E.L.O. and Olgesby were found equally liable and, on appeal, contest the finding of liability, but apparently do not contest that if there were liability then it would be shared equally.

## II. THE FACTS.

In December 1980 Swann Oil sent Hester to New Orleans with another Swann Oil employee to inspect and possibly buy vessels for Lynnhaven. They met Oglesby, a buyer and seller of marine equipment. Oglesby showed Hester the M/V DOLPHIN, which was being offered for sale by Pisces Marine, Inc. Hester testified that Oglesby said he was a broker. Oglesby testified he told Hester he intended to buy the vessel himself and then sell it to Swann Oil. Hester returned and, according to Swann, reported that the vessel was four years old, had been recently repainted and its engines overhauled, had a valid Coast Guard certificate, and was reasonably priced at $175,000, but that an immediate down-payment of $17,000 was necessary because Oglesby said they might otherwise lose the vessel. According to Hester, he told Swann the vessel was ten years old, had rebuilt engines and a valid Coast Guard certificate. Swann transferred the $17,000 to E.L.O. on December 10, 1980.

On that same date, E.L.O. made a deposit of $1,000 to Pisces Marine for the purchase of the M/V DOLPHIN, which Oglesby had contracted to buy for $65,000. On January 13, 1981 Hester gave a check to Oglesby from Swann for $158,000 payable to E.L.O. The bill of sale listed E.L.O. as the sole owner, and noted the sale was "as is, where is". The attached certificate of enrollment and license reflected that the vessel was built in 1963. On January 21, Oglesby paid $58,500 to Pisces.

Hester testified that he made a thorough inspection of the vessel after January 13, 1981, and found problems he considered inconsequential and correctable. He also testified that he had the expertise to discern a "piece of junk" and if he recommended to Swann Oil that a vessel not be bought, the company could and would rely on his opinion. At no time did Hester recommend that Swann Oil not purchase the M/V DOLPHIN.

Swann Oil sent a crew to bring the boat to Norfolk, Virginia. Donald Griffin, one of three licensed captains of that crew, testified that upon seeing the vessel he was shocked, that it was a piece of junk and obviously unseaworthy. He told Swann this, who replied that the vessel was badly needed in Norfolk and so must be brought north. The typically nine-day trip took eighteen days. The delay was caused by constant breakdowns: the repeated failure of the steering apparatus, the constant repair of the bilge pump, the fuel system clogging, and the failure of the port engine. Griffin estimated that forty items needed repair.

Swann testified that when he saw the boat he first thought it must have been switched. He called Hester who had by then resigned from Swann Oil. Hester agreed it probably wasn't the same vessel, and said Pisces would probably honor any repairs. Swann ordered a survey to assess repair costs not knowing that Pisces was not the owner or immediate seller of the vessel. David Ashton conducted the survey and estimated repairs at $100,000 (1981 prices). Swann decided not to repair it. It remained inactive at Swann Oil's terminal where it sank on December 11, 1981; it had been necessary to pump water out of the vessel on a weekly basis to keep it afloat. A few days later it was raised and repaired to stop water leakage. It remains at the Swann Oil terminal.

Hester testified that he moved his family to South Carolina by July 1980 and bought a home which carried a $36,000 mortgage. In January 1981 he and his wife incorporated Carolina Fuels. Hester told Oglesby about the business soon after meeting him. On January 13, the day Hester delivered Swann's payment to Oglesby, Oglesby made a $50,000 payment to Carolina Fuels. Oglesby testified it was a loan, although he asked for no credit references. In January 1982 Hester paid Oglesby $6,750 in "inter-

est" on the "loan", and in April 1982 paid $10,000 on the "principal." At the time of trial no further payments had been made. Plaintiffs contend, of course, it was not a loan but rather a payment made out of the sale profits for the misrepresentations by Hester to Swann.

## III. THE JUDGEMENT.

The district court found that under *Atlantic Lines, Ltd. v. Narwhal, Ltd.*, 514 F.2d 726 (5th Cir.1975), Louisiana law, and not maritime law, applied. Under La.Civ. Code Art. 2520, and *PPG Industries, Inc. v. Industrial Laminates Corp.*, 664 F.2d 1332 (5th Cir.1982), an action will lie for redhibition to void a sale in virtue of some defect in the thing sold which renders it useless or so imperfect that it must be supposed that the buyer would not have purchased it had he known of the defect. It must be established that the defects existed at the time of purchase, were neither known nor apparent to the buyer, and could not or would not be repaired by the seller if he were given the opportunity. *Riche v. Krestview Mobile Homes, Inc.*, 375 So.2d 133 (La.App.3rd Cir.1979). The court found it "inconceivable that a purchaser would pay $175,000 for an 18-year-old vessel in the M/V DOLPHIN's condition if such a purchaser knew of the defects." The court concluded, under applicable Pennsylvania law governing the relationship between Hester and Swann Oil, that "Hester breached his obligation to act as a fiduciary for his employer in that he misrepresented the condition of the M/V DOLPHIN." *Shapiro v. Stahl*, 195 F.Supp. 822 (M.D.Penn.1961). The court also found Hester's testimony concerning the loan "nothing less than incredulous."

The district court's careful and thorough opinion related numerous discrepancies within Oglesby's own testimony and between Oglesby's testimony and that of others. For example, while "Oglesby testified that he was buying the vessel as specula-tion and held himself out as the owner of the vessel, the testimony of all others connected with the sale ... is to the contrary. Swann ... and even Hester testified that they thought Oglesby was acting as broker and not owner." Oglesby testified that he did not know Swann Oil would buy the boat when he made the $1,000 deposit on the vessel to Pisces marine; yet his bank statements show that the deposit and Swann's $17,000 down-payment occurred on the same day. There were also numerous telephone calls from Oglesby to Hester's home in Paoli, Pennsylvania during this period, including a 45 minute conversation the day before the deposit and down-payment were transacted. In short, the court found "a total lack of credibility on the part of Oglesby."

The court found as well that "Oglesby knew the age and history of the vessel, but failed to communicate [this] to the purchaser...." That constitutes breach of duty under *Josephs v. Austin*, 420 So.2d 1181 (La.App. 5th Cir.1982). The court found further that "Oglesby failed to disclose ... that the vessel could be purchased for $65,000, and admitted ... there was no reason why plaintiffs could not have bought the vessel at that price at that time." Under *Josephs*, and *Hall v. Arkansas-Louisiana Gas Co.*, 368 So.2d 984 (La.1979), proof of fraud requires clear and convincing evidence of intent to defraud and actual or probable damage. The district court found sufficient evidence to meet this standard.

The court also found that the "as-is, where-is" language contained in the bill of sale did not negate the implicit warranties of fitness for the intended purpose because such language has been repeatedly held not to effect a waiver of the implicit warranty of fitness. *Hendricks v. Horseless Carriage*, 332 So.2d 892, 894 (La.App.2d Cir.1976); *Lee v. Shaw*, 402 So.2d 152, 154 (La.App. 1st Cir.1981).

 As the district court also noted, officers and shareholders of corporations can be held personally liable under Louisiana law to those who are harmed by their fraudulent misrepresentations. *Altex Ready-Mixed Concrete v. Employers Commercial Union Insurance Co.,* 308 So.2d 889 (La.App. 1st Cir.1975). The court found explicitly that "the whole transaction was contrived to benefit defendants at plaintiffs' expense."

Appellants in this case appeal the district court's evaluation of the evidence presented at trial, contending that an alternative explanation for the facts presented is at least as credible if not more credible than the explanation that the trial judge found to be the true one. We find no merit whatsoever in this contention. First, there was a great deal of conflicting testimony, and in reviewing the district court's opinion, we first recall that "credibility choices and the resolution of conflicting testimony are within the province of the court sitting without a jury, subject only to the clearly erroneous rule of Fed.R.Civ.P. 52(a)." *Rodriguez v. Jones,* 473 F.2d 599–604 (5th Cir.1978), *cert. denied,* 412 U.S. 953, 93 S.Ct. 3023, 37 L.Ed.2d 1007 (1973). "[I]t is not for the appellate court to substitute its judgment on disputed issues of fact for that of the trial court where there is substantial credible evidence to support the finding." *Sanders v. Leech,* 158 F.2d 486, 487 (5th Cir.1946).

Appellants also question, given the evidentiary findings, the trial court's application of Louisiana law concerning redhibitory vices and contract rescission. We find no error in the trial court's interpretation or application of Louisiana law.

 Reviewing the record as a whole, particularly in light of the uncontested evidence alone, we comfortably conclude that the district court had more than sufficient evidence to find that under Louisiana law Oglesby and E.L.O. are guilty of fraud warranting a rescission of the sale for redhibitory vices.

AFFIRMED.