Peter KREATSOULAS, Plaintiff,

v.

The FREIGHTS OF THE LEVANT PRIDE AND THE LEVANT FORTUNE, Steve Valiotis, Peter Xenopoulos, Dimitrios Bekas, Demetrios Demetrios a/k/a Dimitrios Paulos Dimitriolakas and John Zapantis, Defendants.

No. 93 Civ. 1346 (PKL).

United States District Court, S.D. New York.

Dec. 2, 1993.

Soller, Shayne & Horn, New York City (Paulsen K. Vandervert, of counsel), for plaintiff.

Varet & Fink, P.C., New York City (David A. McManus, of counsel), for defendants.

## OPINION AND ORDER

LEISURE, District Judge:

This is an action brought in admiralty. The individual defendants in this case, Steve

148

Valiotis, Peter Xenopoulos, Dimitrios Bekas, Demetrios Demetrios a/k/a Dimitrios Paulos Dimitriolakas, and John Zapantis ("the Personal Guarantors"), seek an order pursuant to rule 12(b)(1) of the Federal Rules of Civil Procedure dismissing the complaint in this action for lack of subject matter jurisdiction. For the reasons set forth below, the defendants' motion to dismiss the action is hereby granted.

## BACKGROUND

This case arises out of a $500,000 loan that was made by the plaintiff, Peter Kreatsoulas, to Levant Line, S.A. ("Levant Line"), a steamship company that offered ocean freight carriage service between the United States and Greece. Levant Line operated, but did not own, the ships that carried the freight it booked. The loan agreement between Kreatsoulas and Levant Line was embodied in four separate promissory notes for $75,000.00, $25,000.00, $50,000.00, and $350,000.00. The loan money was to be used by Levant Line to finance the fulfillment of a major contract of transporting military equipment from the U.S. to Greece for the Greek Ministry of Defense.

The loan was secured in two ways: (1) in a written contract dated December 23, 1991, the Personal Guarantors guaranteed repayment of the $50,000.00 loan, and (2) in a written contract dated January 3, 1992, the owners of the two vessels operated by Levant Line, the LEVANT PRIDE and the LEVANT FORTUNE ("the Owners"), assigned to the plaintiff certain freights[1] to be earned by the two vessels by carrying military equipment consigned to the Greek Ministry of Defense.

Although Levant Line is the principal debtor of the loan, it was not named as a defendant in this action, presumably because it is currently in Chapter 11 bankruptcy proceedings. The defendants in this action are: (1) the freights that had been assigned to the plaintiff as security for the loan, (2) the Owners, and (3) the Personal Guarantors. Only

the Personal Guarantors have appeared in response to the complaint.

The Personal Guarantors have moved to have the action dismissed pursuant to Rule 12(b)(1) of the Federal Rules of Civil Procedure for lack of subject matter jurisdiction.

## DISCUSSION

Defendants allege that the contracts in question are not maritime contracts, and thus are not subject to federal admiralty jurisdiction. The plaintiff advances two alternative arguments for his position that this Court does, in fact, have federal admiralty jurisdiction over the contracts in question. First, the plaintiff contends that the Court has direct subject matter jurisdiction over the contract of personal guaranty. Alternatively, the plaintiff argues that this Court has pendant party jurisdiction over the causes of action asserted against the Personal Guarantors of the loan. As discussed below, the Court finds these arguments unpersuasive.

There are three contracts at issue in this case. The core agreement, between the plaintiff and the now bankrupt Levant Line, was the aforementioned loan embodied in four separate promissory notes. The other two contracts, each signed on a different date by different parties and embodied in a different writing, served as security for the core loan agreement. In the assignment contract, the Owners of the ships assigned all freights of the ships to the plaintiff. In the contract of personal guaranty, the five Personal Guarantors guaranteed payment of the loan to Levant Line. It is this third contract over which the movants claim this Court lacks jurisdiction.

As a court of limited jurisdiction, a district court is empowered only to hear cases that either sound in diversity or are based on a federal question. "Whenever it appears by suggestion of the parties or otherwise that the court lacks jurisdiction of the subject matter, the court shall dismiss the action." Fed.R.Civ.P. 12(h)(3). This Court, therefore, must decide at this juncture whether *any* of the claims brought by the plaintiff are proper

1. In the current context, the term "freight" refers to "the compensation paid for the transportation of goods or for the use of all or part of a

ship, train, plane, or other means of such transportation." Webster's Third New International Dictionary 908 (1981).

subject matter for this Court's jurisdiction, and is not limited to consideration of the claims against the present movants.

In considering a motion to dismiss for lack of subject matter jurisdiction under Federal Rule of Civil Procedure 12(b)(1), allegations of the complaint should be construed favorably to the pleader. *Scheuer v. Rhodes,* 416 U.S. 232, 236, 94 S.Ct. 1683, 1686, 40 L.Ed.2d 90 (1974); *Antares Aircraft, L.P. v. Fed. Republic of Nigeria,* 948 F.2d 90, 96 (2d Cir.1991). However, argumentative inferences favorable to the party asserting jurisdiction should not be drawn. *Norton v. Larney,* 266 U.S. 511, 515, 45 S.Ct. 145, 147, 69 L.Ed. 413 (1925); *Atlantic Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.,* 968 F.2d 196, 198 (2d Cir.1992). This Court shall now consider each of the plaintiff's arguments for a possible basis of federal admiralty jurisdiction.

## A. Direct Subject Matter Jurisdiction Over the Personal Guaranty

■ Title 28 U.S.C. § 1333 grants federal district courts the power to entertain "[a]ny civil case of admiralty or maritime jurisdiction." As the United States Court of Appeals for the Second Circuit ("Second Circuit") has recently noted in *Atlantic Mut. Ins. Co. v. Balfour MacLaine Int'l Ltd.,* "[i]t has long been decided that this grant includes jurisdiction 'over all contracts ... which relate to the navigation, business, or commerce of the sea.'" 968 F.2d 196, 199 (2d Cir.1992) (quoting *De Lovio v. Boit,* 7 F.Cas. 418, 444 (C.C.D.Mass.1815) (No. 3,776) (Story, J.)). However, the *Balfour* Court further noted that "'[t]he boundaries of admiralty jurisdiction over contracts ... being conceptual rather than spatial, have always been difficult to draw.'" *Balfour,* 968 F.2d at 199 (quoting *Kossick v. United Fruit Co.,* 365 U.S. 731, 735, 81 S.Ct. 886, 890, 6 L.Ed.2d 56 (1961)). Precedent in this area provides some guidance as to whether or not a contract should be considered maritime. A contract to repair a ship, for example, is a maritime contract, *Rubino v. Hudson River Glassworks,* No. 90 Civ. 1439, 1990 WL 108364 (S.D.N.Y. July 26, 1990), while a contract to sell a ship is not. *Lynnhaven Dolphin Corp. v. E.L.O. Enterps., Inc.,* 776 F.2d

538 (5th Cir.1985). A contract to "insure a ship ... is maritime, but a contract to build a ship is not...." *Kossick v. United Fruit Co.,* 365 U.S. 731, 81 S.Ct. 886, 6 L.Ed.2d 56 (1961) (citations omitted).

The contract under which the movants here are being sued is one of personal guaranty—the five individual defendants promised to repay the $500,000 to the plaintiff should Levant Line default on the loan. In order for this action to be grounded directly in admiralty jurisdiction, the contract of personal guaranty must be found to be a maritime contract. *Ingersoll Milling Machine Co. v. M/V Bodena,* 829 F.2d 293, 302 (2d Cir.1987), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988).

Any analysis of whether or not a contract should be considered a maritime contract must begin with an examination of the goals of admiralty jurisdiction. "[T]he question of whether a dispute falls within admiralty jurisdiction cannot be divorced from the 'purposes for which admiralty and maritime jurisdiction was granted.'" *Balfour,* 968 F.2d at 199 (citing *Insurance Co. v. Dunham,* 78 U.S. (11 Wall.) 1, 31, 20 L.Ed. 90 (1870)). As the Second Circuit has recently explained:

> [b]efore attempting to categorize contractual rights as maritime or non-maritime, a federal court must first consider whether an issue related to maritime interests has been raised.

> \*  \*  \*  \*  \*  \*

> Admiralty jurisdiction was created to provide a neutral federal forum and a uniform body of law to adjudicate rights and liabilities as they related to the trafficking of sea-faring vessels. Simply stated, the "fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'"

*Balfour,* 968 F.2d at 199–200 (citations omitted).

Whether an issue is "related to" maritime interests can often be a difficult determination to make. A noted treatise in admiralty law describes the necessary relationship between the subject matter of the contract and the maritime interest as follows:

In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping.

1 Friedell, Benedict on Admiralty § 182, at 12–6 (7th ed. 1993). *See also Guidry v. Durkin,* 834 F.2d 1465, 1471 (9th Cir.1987) (noting that the determination of whether a significant relationship exists should involve consideration of "(1) traditional concepts of the role of admiralty law; (2) the function and role of the parties; (3) the types of vehicles and instrumentalities involved; and (4) the causation and nature of the injury suffered").

The contract at issue in this case concerns a guarantor's promise to pay money to a lendor in the event that the borrower defaults on a loan. The link between this promise and the operation, management, or navigation of any ship is, at best, a tenuous one.

*Pacific Surety Co. v. Leatham & Smith Towing & Wrecking Co.,* 151 F. 440 (7th Cir.1907), has long been the leading case for the proposition that a surety agreement is not a maritime contract. In *Pacific Surety,* the core contract was a charter agreement undertaken to provide maritime service in return for payment. The contract required the charterer to furnish a bond guaranteeing payment of all bills for the running expenses, wages, and repairs connected with the charter of the vessel. The surety company, a third party, made a separate contract as surety on the bond. The surety company was subsequently sued in admiralty by the owners of the vessels.

The *Pacific Surety* court began its jurisdictional analysis by conceding that it was "unquestionable" that the undertaking of the charterer was a maritime contract. *Id.* at 441. Turning next to the ancillary surety agreement, however, the court made a distinction between a charter party's promise to perform maritime obligations and a surety's promise to pay damages in the event of nonperformance on the part of the charterer:

The undertaking ... under the bond in suit is not for maritime service, nor does its performance involve maritime transactions. Its sole obligation is for the payment of money arising out of a breach of the terms of the pre-existing charter party, in no sense for specific performance of such terms.... The direct subject-matter of the suit is the covenant to pay such damages, which neither involves maritime service nor maritime transactions; and we are of opinion that the mere fact that the event and measure of liability are referable to the charter party does not make the bond a maritime contract, nor make its obligation maritime in the jurisdictional sense. The common-law nature of the bond is unchanged.

*Id.* at 443. Thus, the court concluded, since payment of money is not a maritime obligation, the suretyship contract was not within federal admiralty jurisdiction.[2] *Id. See also Interocean Shipping Co. v. Nat'l Shipping & Trad. Corp.,* 462 F.2d 673 (2d Cir. 1972), *cert. denied,* 423 U.S. 1054, 96 S.Ct. 785, 46 L.Ed.2d 643 (1976) ("Merely agreeing to act as surety for a charter party is not a maritime contract.").

The policy originally set out in *Pacific Surety* has been echoed recently by the Second Circuit in *Fednav, Ltd. v. Isoramar, S.A.,* 925 F.2d 599 (2d Cir.1991), where the

---

**2.** In the case at bar, the plaintiff, in his opposition brief, cites *Compagnie Francaise de Navigation a Vapeur v. Bonnasse,* 19 F.2d 777 (2d Cir.), *cert. denied,* 275 U.S. 551, 48 S.Ct. 114, 72 L.Ed. 421 (1927), for the proposition that since the core contract in this case was a loan agreement between the plaintiff and a shipping company, the obligation to repay the loan constituted a promise to perform a maritime obligation. This argument is unpersuasive—the fact that the guarantor's assumed obligation stems from a loan to a shipping company does not necessarily render it a maritime obligation. *Bonnasse* can be distinguished from the present case in that *Bonnasse* involved both the assumption of the principal's monetary liability and an undertaking to specifically perform the principal's maritime obligations. Indeed, the *Bonnasse* Court cited *Pacific* and stated that if the promise had been a simple suretyship or guaranty, it would not be cognizable as a contract governed by admiralty jurisdiction. *Bonnasse,* 19 F.2d at 779.

owner of a vessel allegedly contracted with the vessel's lessee to contribute to the latter's settlement of a cargo claim. When the lessee requested the payment of fifty percent of the settlement and attorneys' fees and the owner refused to pay, the lessee filed a complaint in the United States District Court for the Southern District of New York ("Southern District") for recovery of the sums, based in admiralty jurisdiction.

Judge Broderick of the Southern District dismissed the action for want of subject matter jurisdiction, finding that "[w]hile the cargo claim may have sounded in admiralty, the alleged agreement by defendant to contribute to plaintiff's settlement of that claim sounded in contract, but not in admiralty." *Id.* at 601 (quoting the District Court opinion).

On appeal, the Second Circuit reiterated that since the contribution agreement was a separate and distinct contract that "'involve[d] neither maritime service nor maritime transactions,'" it was not within admiralty jurisdiction. *Id.* (quoting *Pacific Surety,* 151 F. at 443). *See also Consolidated Bathurst, Ltd. v. Rederiaktiebolaget Gustaf Erikson,* 645 F.Supp. 884, 886 (S.D.Fla.1986) ("An agreement to satisfy an obligation arising from a maritime tort or contract is not a maritime contract, and an action for breach of such a contract is not an admiralty claim.").

Similarly, in the present case, the guaranty of the loan was a simple promise to pay money to the lender in case of Levant Line's default. The Personal Guarantors assumed this liability in a separate contract and their assumption of this liability had nothing to do with the maritime activities of Levant Line. The fact that the Personal Guarantors' obligation arose out of a maritime loan agreement and was contingent on the breach of such agreement does *not* render the enforcement of the obligation an admiralty claim.

The interest being enforced by the action against the Personal Guarantors in this case is strictly monetary. The action has little, if any, connection to any aspect of maritime commerce. While the purpose of the loan to Levant Line was to meet the short term operating expenses of a maritime expedition, the personal guaranty was not conditioned on this purpose, nor did the separate contract of guaranty refer to this purpose in any way. Since the contract of guaranty does not "relate to the navigation, business, or commerce of the sea," *Balfour,* 968 F.2d at 199, it is not a proper subject for federal admiralty jurisdiction.

## B. Pendant Party Jurisdiction

The plaintiff's second argument is that this Court has admiralty jurisdiction over the present action based on the doctrine of pendant party jurisdiction. Under this doctrine, where a court has jurisdiction over one or more aspects of a case, it may properly assert jurisdiction over any other aspects of the case that share a common nucleus of operative facts. *United Mine Workers v. Gibbs,* 383 U.S. 715, 86 S.Ct. 1130, 16 L.Ed.2d 218 (1966); *Roco Carriers, Ltd. v. M/V Nurnberg Exp.,* 899 F.2d 1292 (2d Cir.1990).

As plaintiff correctly notes, the doctrine of pendant party jurisdiction continues to survive in this Circuit,[3] especially in admiralty cases:

> The established rule of this Circuit has been that pendent party jurisdiction is available in admiralty cases in those instances in which the state law claim against the additional party arises out of a common nucleus of operative facts with the admiralty claim and the resolution of the factually connected claims in a single proceeding would further the interests of con-

3. 28 U.S.C. § 1367, enacted Dec 1, 1990, codified the law with regard to pendant party, pendant claim, and ancillary jurisdiction by granting federal district courts "supplemental jurisdiction over all other claims that are so related to claims in the action within [the Court's] original jurisdiction that they form part of the same case or controversy under Article III of the United States

Constitution." *Id.* The statute abandons the old labels of pendant and ancillary jurisdiction, but preserves the principles established under the doctrines, referring to all such jurisdiction as "supplemental." *See* Denis F. McLaughlin, *The Federal Supplemental Jurisdiction Statute—A Constitutional & Statutory Analysis,* 24 Ariz.St. L.J. 849 (1992).

serving judicial resources and fairness to the parties.

*Roco Carriers,* 899 F.2d at 1295.

■ In general, in order to invoke supplemental jurisdiction, there must be an underlying cognizable federal claim. If that underlying federal claim shares a common nucleus of operative facts with an ancillary claim, the court may assert jurisdiction over the ancillary claim.

In this case, in order to find supplemental jurisdiction over the personal guaranty claim, this Court would first have to find direct subject matter jurisdiction in admiralty over the plaintiff's claims against the Owners. Next, the Court would have to determine that the plaintiff's claims against the Personal Guarantors are so related to its claims against the Owners that they form part of the same case or controversy. 28 U.S.C. § 1367.

### 1. *Original Jurisdiction Over the Assignment Contract*

■ The contract between the plaintiff and the Owners was an assignment of the freights of the S.S. LEVANT PRIDE and the S.S. LEVANT FORTUNE. Like the personal guaranty, it was a separate contract signed at a different time than any of the four promissory notes that embodied the original loan agreement.

To determine whether the assignment was a maritime contract, this Court must again consider "whether an issue related to maritime interests has been raised." *Balfour,* 968 F.2d at 199.

The question presented is whether an assignment of freights, executed as security of for loan, implicates maritime concerns. While the contract at issue involved the

freights of maritime vessels, its primary purpose, like that of the personal guaranty, was to provide collateral for a loan. The assignment had no relation to the operation or management of the vessels. This Court sees no "direct and substantial link between the contract and the operation of the ship, its navigation or its management afloat, taking into account the needs of the shipping industry," 1 Benedict on Admiralty § 182 at 12–6. Accordingly, the Court concludes that the contract is "so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction." *Balfour,* 968 F.2d at 200.

The relevant case law dealing with freight assignments [4] leads this Court to the conclusion that the action should be dismissed. In *Economu v. Bates,* 222 F.Supp. 988 (S.D.N.Y.1963) (Weinfeld, J.), for example, the contract at issue was a partnership agreement. The plaintiff claimed that the agreement had been breached and that the defendant had misappropriated freight moneys derived from the joint operation of a vessel.

In deciding whether the agreement was maritime, Judge Weinfeld stressed that it is the subject matter of the contract that is controlling: "Admiralty is concerned not with isolated self-serving allegations or the form of the action, but with its substance. The fundamental issue of whether the contract sued upon is maritime is governed by the nature and subject matter of the contract." *Id.* at 988. Judge Weinfeld found that the contract was primarily concerned with the terms of the joint venture, explaining that the nature of the venture did not change this focus: "Nor is the basic nature of the contract affected or changed merely because it is

---

4. The Second Circuit decided a case some years ago whose facts, at first glance, may appear similar to the one at bar. In *Commercial Trust Co. v. United States Shipping Board Emergency Fleet Corporation,* 48 F.2d 113 (2d Cir.1931), the defendant had assigned certain freights to the plaintiff as security for loans made by the plaintiff to the defendant. When the defendant defaulted on the loan and the plaintiff attempted to claim the freights, the plaintiff discovered that the defendant had transferred the freights to a third person. The Court found jurisdiction over

the action to recover the freights because the jurisdiction over the enforcement of the loan extended over the collection of the property put forth as security for the loan. *Id.* at 114–15. *Commercial Trust* differs from the case at bar in that the security in that case was offered by the borrower in the *same* agreement that embodied the loan—the defendant became both the borrower *and* the assignor in the same contract. The assignment at issue in the present case, in contrast, was a separate agreement signed by a third party.

a maritime venture and relates to maritime activities." *Id.* at 990. *See also In re Atlantic, Gulf & Pacific S.S. Co.*, 3 F.2d 311 (D.Md.1923) (assignment of freights for a non-maritime purpose held *not* to be a maritime contract). Accordingly, Judge Weinfeld dismissed the action.

The "nature and subject matter" of the contract in the present case was to provide collateral for a loan. The fact that the loan was to be used to fund a maritime venture or that the subjects of the assignment were the freights of maritime vessels does not bring this action within the concerns of maritime jurisdiction. Since the assignment contract is not a maritime contract, this Court lacks direct subject matter jurisdiction in admiralty. *Ingersoll,* 829 F.2d at 302.

### 2. *Supplemental Jurisdiction Over the Personal Guaranty*

Since there is no original jurisdiction over the assignment contract, there exists no federal claim on which to base supplemental jurisdiction over the contract of personal guaranty.

### C. Dismissal of the Action

In its opposition brief, the plaintiff urges that since the Owners have not responded to the complaint, the present motion by the Personal Guarantors should be viewed as being limited to a motion to dismiss only with respect to claims against the Personal Guarantors. Federal subject matter jurisdiction, however, "may be raised at any time during the litigation and must be raised *sua sponte* by a federal court when there is an indication that jurisdiction is lacking." *Hughes v. Patrolmen's Benev. Assoc., Inc.*, 850 F.2d 876, 881 (2d Cir.), *cert. denied,* 488 U.S. 967, 109 S.Ct. 495, 102 L.Ed.2d 532 (1988) (citing Fed. R.Civ.P. 12(h)(3); *Bender v. Williamsport Area School Dist.*, 475 U.S. 534, 540, 106 S.Ct. 1326, 1331, 89 L.Ed.2d 501 (1986)).

The analysis set out above has demonstrated that this Court lacks jurisdiction over both the action on the contract of personal guaranty and the action on the assignment contract. Accordingly, based on the preceding conclusions, this action is dismissed in its entirety without prejudice. *Meyer v. Kansas*

*City S.R. Co.*, 84 F.2d 411, 415 (2d Cir.), *cert. denied,* 299 U.S. 607, 57 S.Ct. 233, 81 L.Ed. 448 (1936); *Pepitone v. American Standard Inc.*, No. 89 Civ. 0189, 1991 WL 207366, at *4 (S.D.N.Y. Oct. 3, 1991).

### CONCLUSION

For the foregoing reasons, the motion to dismiss for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) is granted and the complaint is dismissed.

### SO ORDERED