United States Court of Appeals,

Eleventh Circuit.

No. 95-9425.

AMBASSADOR FACTORS, Plaintiff-Appellant,

v.

RHEIN-, MAAS-, UND SEE- SCHIFFAHRTSKONTOR GMBH (VORMALS SANARA REEDEREIKONTOR GmBH), Defendant-Appellee.

Feb. 20, 1997.

Appeal from the United States District Court for the Southern District of Georgia. (No. CV494-319), B. Avant Edenfield, Chief Judge.

Before ANDERSON, Circuit Judge, and KRAVITCH[*] and HENDERSON, Senior Circuit Judges.

KRAVITCH, Senior Circuit Judge:

Appellant Ambassador Factors Corporation ("Ambassador") brought the instant suit in the Southern District of Georgia, invoking that court's admiralty jurisdiction pursuant to 28 U.S.C.A. § 1333(1) (1993). On Defendant-Appellee Rhein-, Mass-, und See- Schiffahrtskontor's ("RMS") motion, the district court held that it lacked jurisdiction over the case. Undertaking a *de novo* review of the district court's dismissal for lack of subject matter jurisdiction, *Hall v. U.S. Dept. Veteran's Affairs,* 85 F.3d 532, 533 (11th Cir.1996), we reverse.

I. FACTS

Pursuant to bills of lading designating the district court as the forum for resolving contract disputes, RMS's predecessor in interest, Sanara Reedereikontor ("Sanara"), hired Topgallant Lines,

---

[*]Judge Kravitch was in regular active service when this matter was originally submitted but has taken senior status effective January 1, 1997.

Inc. ("Topgallant") to ship certain cargo from Europe to the United States.  Topgallant borrowed money from Ambassador, and, as part of the loan agreement, assigned its contract rights and accounts receivable under the RMS contract to Ambassador.  Topgallant subsequently entered bankruptcy.  The bankruptcy court ruled that Topgallant had abandoned its accounts receivable to Ambassador and that Ambassador had acquired a perfected security interest in Topgallant's freights under the contract. *In re Topgallant Lines, Inc.,* 138 B.R. 314 (Bankr.S.D.Ga.1992), *aff'd in pertinent part,* 154 B.R. 368 (S.D.Ga.1993), *aff'd,* 20 F.3d 1175 (11th Cir.1994). In effect, the court held that the Topgallant-to-Ambassador assignment was valid.

According to the complaint in the instant proceeding, approximately $31,000 in unpaid freights is due under the contract. Ambassador therefore sued RMS, alleging breach of the original Sanara-Topgallant contract.  RMS moved to dismiss the suit, claiming that the fact that Ambassador is the assignee of the right to collect on a shipping contract—rather than an original party to the contract—deprived the district court of admiralty jurisdiction. The court agreed and dismissed.

## II. DISCUSSION

The Supreme Court and this court have held that the nature of the disputed contract, not the status or alignment of parties, is the crucial inquiry in determining whether a contract is in admiralty.  In *Exxon Corp. v. Central Gulf Lines, Inc.,* 500 U.S. 603, 611-12, 111 S.Ct. 2071, 2076, 114 L.Ed.2d 649 (1991), the Court noted that "admiralty jurisdiction is designed to protect

maritime commerce."  A court must consider "whether the services actually performed pursuant to a contract are maritime in nature. It is inappropriate, therefore, to focus on the status of a claimant to determine whether admiralty jurisdiction exists." *Id.* We have stated similarly:

> To come within the federal court's admiralty and maritime jurisdiction, "such contracts must pertain directly to and be necessary for commerce or navigation upon navigable waters.' * * * The test we apply in deciding whether the subject matter of a contract is necessary to the operation, navigation, or management of a ship is a test of reasonableness, not of absolute necessity.

*Nehring v. Steamship M/V Point Vail,* 901 F.2d 1044, 1048 (11th Cir.1990) (quoting 7A MOORE'S FEDERAL PRACTICE ¶ .230[2], at 2761-62 (1988)).  In sum, we look to whether the substance of the contract at issue in the dispute—without regard to the identity of the parties—is reasonably necessary to the conduct of maritime commerce.[1]

Applying this standard, we conclude that the district court erred in holding that it lacked jurisdiction.  The contract at issue is the Sanara-Topgallant shipping contract, despite RMS's claims to the contrary.  Ambassador seeks collection of freights owed to Topgallant for having shipped goods to the United States. The assignment of the contract to Ambassador is not at issue; indeed, it has been held valid by the bankruptcy court, whose

---

[1]*See also Ingersoll Milling Mach. Co. v. M/V Bodena,* 829 F.2d 293, 302 (2d Cir.1987) ("It is the character of the work to be performed under the contract that is determinative of whether the contract was maritime."), *cert. denied,* 484 U.S. 1042, 108 S.Ct. 774, 98 L.Ed.2d 860 (1988); *Proleride Transp. Sys., Inc. v. Union Carbide Corp.,* 498 F.Supp. 680, 682 (D.Mass.1980) (a contract, to be in admiralty, must be "wholly maritime"; it is "wholly maritime" if the "primary tenor" of the contract is maritime).

decision was affirmed by the district court and this court. Thus, jurisdiction exists over this action if the shipping contract is reasonably necessary to maritime commerce. Because courts uniformly have agreed that "[s]uits brought against a cargo owner by a carrier to recover freight due under the terms of an ocean bill of lading ... are clearly within the admiralty jurisdiction of the federal court," *see* 1 STEVEN F. FRIEDELL, BENEDICT ON ADMIRALTY § 190[a], at 12-50 (1996) (collecting cases), we hold that the district court had jurisdiction to hear Ambassador's suit to enforce the shipping contract.[2]

This result is consistent with the case law, although sparse, addressing the assignment of maritime contracts. RMS urges us to follow *Kreatsoulas v. Freights of the Levant Pride & the Levant Fortune,* 838 F.Supp. 147 (S.D.N.Y.1993). That case, however, is not contrary to our holding here. In *Kreatsoulas,* the plaintiff loaned a shipping company money to finance a shipping venture and the company secured the loan by assigning to the plaintiff an interest in the freights. When the shipping company went bankrupt, the plaintiff sued the freights *in rem,* seeking enforcement of the assignment contract. The court held that it lacked jurisdiction over the assignment, because its purpose was merely to provide collateral for a loan. Nothing about the assignment, it ruled, was maritime in nature. *Id.* at 152. Unlike the instant case,

---

[2]RMS concedes that if Topgallant had not assigned its rights and had brought the instant collection action, admiralty jurisdiction would be proper. In light of the Supreme Court's admonition that it is "inappropriate ... to focus on the status of the claimant," *Exxon,* 500 U.S. at 612, 111 S.Ct. at 2076, we find this concession significant, as it recognizes the maritime nature of the contract itself.

*Kreatsoulas* did not involve a suit to enforce the underlying shipping contract; rather, it was a suit to enforce the assignment contract. That distinction is of central importance here because Ambassador's suit is to enforce the Sanara-Topgallant shipping contract, which is self-evidently maritime in nature.

In a more similar case, *Continental Ill. Nat'l Bank & Trust Co. of Chicago v. Alltransport, Inc.,* 1979 A.M.C. 669 (N.D.Ill.1978), the court reached the same result we do today. In that case, a shipping company assigned freights due under a shipping contract to a bank as collateral for a loan. In holding that it had jurisdiction, the court ruled that the assignee could sue those parties who owed the shipper under the shipping contract because the contract at issue in the suit—the shipping contract—was maritime in nature and "because the underlying maritime action gives [the assignee] standing to bring its claim in admiralty." *Id.* at 671. Likewise, the underlying maritime action here (the Sanara-Topgallant contract) sustains jurisdiction over claims by an assignee (Ambassador).

Accordingly, we hold that where a contract is indisputably maritime in nature, such as the shipping contract at issue in this case, and a party to the contract assigns its rights to a third party, the third party may sue in admiralty to enforce the original contract, even though the assignment contract itself might not be within the federal courts' admiralty jurisdiction.[3]

---

[3]We need not, and expressly do not, decide whether or not the assignment contract is within the federal admiralty jurisdiction, or under what circumstances it might be. Similarly, we need not decide whether or not *Kreatsoulas* was decided correctly.

## III. CONCLUSION

The order of the district court is REVERSED and the case is REMANDED for proceedings consistent with this opinion.