OPINION OF THE COURT
Barry A. Cozier, J.
Defendant Stolt Tankers Inc. (Stolt), a corporation engaged *934 in ocean transportation, storage, and distribution of chemicals and other liquids, originally moved pursuant to CPLR 3211 (a) (5) to dismiss the complaint based upon the Statute of Frauds. Stolt still seeks dismissal, but requests that its motion be treated as one for summary judgment, as the motion was made after issue was joined.
BACKGROUND
By complaint dated September 11, 1997, Tauben alleged that in 1991 the parties entered into an agreement whereby Tauben, through its principal Jose Elias Marin, was to act as exclusive broker for Stolt in connection with Stolt’s contracts of affreightment with third parties for the transportation of chemical cargoes originating out of Brazil. In exchange, Tauben was to receive commission payments from Stolt based upon the amount of ethylene dichloride that was transported by Stolt vessels. Tauben contends that the agreement with Stolt provided, inter alia: (1) the duration of the agreement was to be coextensive with the duration of the contracts; (2) the commission for freight to Japan was a fixed amount per metric ton; and (3) Stolt was making commission payments paid in United States dollars into Tauben’s bank account following the loading of cargo onto Stolt’s vessels. Tauben maintains that it is due approximately $1.25 million in commissions for cargoes already delivered and scheduled to be delivered.
Stolt defends this action claiming that there is no evidence that such an agreement exists. Stolt maintains that agreements for brokerage commissions are governed by the Statute of Frauds and, as no such written agreements exist, the complaint should be dismissed with prejudice. By letter to the court dated June 1, 1998, after receiving notice from Tauben that a motion to dismiss pursuant to CPLR 3211 was procedurally improper, Stolt requested that its motion to dismiss be treated as one for summary judgment.
Tauben asserts five major grounds for denying the motion to dismiss: (1) because Stolt failed to file a preanswer motion to dismiss, it cannot now make such a motion after issue has been joined; (2) the motion may not be considered as a motion for summary judgment, as adequate notice was not given; (3) Stolt cannot establish it is entitled to the relief requested, as the agreement in question falls within the court’s supplemental maritime jurisdiction, precluding any reliance on the Statute of Frauds; (4) Tauben’s documents support the breach of *935 contract claim; and (5) Tauben is entitled to complete discovery prior to determination of the matter.
DISCUSSION
A. Conversion of Motion to Dismiss to Summary Judgment
Motion
Tauben maintains that before converting a motion to dismiss to a motion for summary judgment, adequate notice must be given and the parties must be given an opportunity to make an appropriate record. However, Stolt counters that courts regularly convert motions to ones for summary judgment and that Tauben has received notice and an opportunity to submit additional documents to create an appropriate record.
The motion to dismiss should be converted to a motion for summary judgment for three reasons. First, because Stolt had filed its answer prior to filing its motion, the proper interpretation of the motion is one for summary judgment. (See, Tufail v Hionas, 156 AD2d 670, 671 [2d Dept 1989] [because issue had been joined, court should not have deemed unlabeled motion as a motion to dismiss, but instead as one for summary judgment].) Second, the Court of Appeals has stated that a motion labeled as one to dismiss rather than one for summary judgment is a “mere irregularity” that may be overlooked. (See, Rich v Lefkovits, 56 NY2d 276, 280 [1982] [“the fact that the motion as made recited CPLR 3211 rather than 3212 as its basis would constitute a mere irregularity which under CPLR 2001 should be disregarded”].) Third, because Tauben has received notice of the request to convert the motion to one for summary judgment, and because Tauben has submitted additional documents and affidavits into the record, a conversion would not prejudice Tauben. (See, Zack Metal Co. v International Nav. Corp., 67 NY2d 892, 895 [1986] [fact that Appellate Division treated motions as ones for summary judgment when Special Term’s consideration of them was as motions to dismiss was not prejudicial, as “plaintiffs answering affidavit acknowledged in several places that defendants’ motions were for summary judgment and plaintiff responded to the motions by setting forth factual data in support of the allegations of the complaint”].) Accordingly, Stolt’s motion will be treated as one for summary judgment.
B„ Summary Judgment Standard
It is well established that summary judgment may be granted only when it is clear that no triable issue of fact exists. *936 (Alvarez v Prospect Hosp., 68 NY2d 320, 325 [1986].) The burden is upon the moving party to make a prima facie showing that he or she is entitled to summary judgment as a matter of law. (Zuckerman v City of New York, 49 NY2d 557, 562 [1980]; Friends of Animals v Associated Fur Mfrs., 46 NY2d 1065, 1067 [1979].) A failure to make such a prima facie showing requires a denial of the summary judgment motion, regardless of the sufficiency of the opposing papers. (Ayotte v Gervasio, 81 NY2d 1062, 1063 [1993].) If a prima facie showing has been made, the burden shifts to the opposing party to produce evidentiary proof sufficient to establish the existence of material issues of fact. (Alvarez v Prospect Hosp., supra, at 324; Zuckerman v City of New York, supra.) Although the papers submitted in support of and in opposition to a summary judgment motion are examined in a light most favorable to the party opposing the motion (Martin v Briggs, 235 AD2d 192, 196 [1st Dept 1997]), mere conclusions, unsubstantiated allegations, or expressions of hope are insufficient to defeat a summary judgment motion. (Zuckerman v City of New York, supra, at 562.) Upon the completion of the court’s examination of all the documents submitted in connection with a summary judgment motion, the motion must be denied if there is any doubt as to the existence of a triable issue. (Rotuba Extruders v Ceppos, 46 NY2d 223, 231 [1978].)
C. Applicability of Statute of Frauds
Stolt argues that the lack of any written agreement violates the Statute of Frauds, justifying dismissal of the complaint. Stolt maintains the Statute of Frauds is applicable for two reasons. First, pursuant to General Obligations Law § 5-701 (a) (1), the terms of the alleged agreement were not to be performed within one year. Second, pursuant to General Obligations Law § 5-701 (a) (10), the alleged agreement is for compensation for services rendered in negotiating the purchase, sale, exchange, renting, or leasing of a business opportunity, business, its good will, inventory, fixtures, or an interest therein.
Tauben counters, asserting that as the agreement falls within the court’s supplemental maritime jurisdiction, it precludes any reliance on the Statute of Frauds. Tauben further maintains that in the event the court determines the Statute of Frauds is applicable, the presence of material issues of fact and documents supporting the breach of contract claim merit denial of Stolt’s motion.
*937 As noted by Tauben, the United States Supreme Court has held that New York’s Statute of Frauds does not apply to maritime contracts, because oral contracts are valid under maritime law. (See, Kossick v United Fruit Co., 365 US 731, 733-734 [1961].) However, the precise categorization of maritime contracts “has proven particularly elusive.” (CTI-Container Leasing Corp. v Oceanic Operations Corp., 682 F2d 377, 379 [2d Cir 1982].) To determine if an alleged agreement falls within maritime law, the role of the court “is to focus the jurisdictional inquiry upon whether the nature of the transaction was maritime.” (Exxon Corp. v Central Gulf Lines, 500 US 603, 611 [1991].) Thus, as the Second Circuit recently stated, “agency contracts can be a basis for admiralty jurisdiction if the ‘nature and subject matter’ of the contract is maritime.” (Shipping Fin. Servs. Corp. v Drakos, 140 F3d 129, 132 [2d Cir 1998].) A contract is considered to be maritime “[i]f the subject matter of the contract ‘ “relat[es] to a ship in its use as such, or to commerce or to navigation on navigable waters, or to transportation by sea or to maritime employment” ’ ”. (Ingersoll Milling Mach. Co. v M/V Bodena, 829 F2d 293, 302 [2d Cir 1987], cert denied sub nom. Bernard & Co. v Ingersoll Milling Mach. Co., 484 US 1042 [1988], quoting CTI-Container Leasing Corp. v Oceanic Operations Corp., supra, at 379.) Finally, as a Federal court has held: “ ‘In order to be considered maritime, there must be a direct and substantial link between the contract and the operation of the ship, its navigation, or its management afloat, taking into account the needs of the shipping industry, for the very basis of the constitutional grant of admiralty jurisdiction was to ensure a national uniformity of approach to world shipping.’ ” (Venezuelan Container Line v Navitran Corp., 792 F Supp 1281, 1283 [SD Fla 1991], quoting 1 Benedict on Admiralty § 182 [7th ed 1991].)
The detailed affidavit submitted to the court by Marin alleges that Tauben’s services, for a period of five years, included negotiating: (1) the duration of the contracts of affreightment; (2) the terms concerning annual cargo volume; (3) the amount to be paid per metric ton of cargo loaded onto Stolt’s vessels; (4) discharge port requirements and selection of ports; (5) demurrage and bunker rates; and (6) provisions concerning the nomination of ports and cargo declaration. In addition, Marin allegedly obtained the acceptance by a third party of Stolt’s demurrage invoices.
The court concludes that the alleged agreement is maritime and, therefore, the Statute of Frauds is inapplicable. The ser *938 vices allegedly provided by Tauben specifically relate to the use of a ship and commerce on navigable waters.* Accordingly, the contract is maritime as “there appears a direct and substantial link between [plaintiffs] services and the operation of [defendant’s] ships.” (In re Seascape Cruises, 191 Bankr 944, 952 [SD Fla 1995], affd sub nom. Maduro Travel v Skandinaviska, 98 F3d 1353 [11th Cir 1996].) This conclusion is consistent with determinations reached by other courts. (See, Ambassador Factors v Rhein-, Maas-, und See- Schiffahrtskontor GMBH, 105 F3d 1397 [11th Cir 1997] [suit brought against shipper to collect unpaid freights due under shipping contract was within admiralty jurisdiction]; Kreatsoulas v Freights of Levant Pride & Levant Fortune, 838 F Supp 147 [SD NY 1993] [no admiralty jurisdiction, as purpose of assignment contract at issue was to provide collateral for a loan; nothing about the assignment was maritime in nature]; Robert E. Derecktor, Inc. v Norkin, 820 F Supp 791, 792-793 [SD NY 1993] [“The Supreme Court has recently made it clear that admiralty jurisdiction embraces all matters relating to use, support or maintenance of navigable vessels”], citing McDermott Intl, v Wilander, 498 US 337 [1991]; Exxon Corp. v Central Gulf Lines, supra.)
Stolt cites to Shipping Fin. Servs. Corp. (supra) for the proposition that “under no circumstances” are brokerage activity and claims for commissions maritime. (Reply Mem of Law in support of motion for summary judgment, at 15-16, n 1.) Although the Shipping Fin. court did find that the plaintiff had failed to show that its brokerage agreement was sufficiently maritime in nature to come within maritime jurisdiction, Stolt fails to acknowledge that the court also stated the following: “We reiterate the fact-specific nature of our decision * * * In reaching this conclusion, we make no ruling as to the continuing validity of the preliminary contract doctrine, or the potential for other charter party brokerage agreements to qualify for admiralty jurisdiction.” (Shipping Fin. Servs. Corp. v Drakos, supra, at 134 [emphasis supplied].) Significantly, the agreement at issue in the Shipping Fin. case concerned isolated instances of a broker finding a charterer and owner for a charter party. Such a scenario is distinct from the instant case, in which the plaintiff allegedly provided numerous maritime services regarding the use of navigable vessels to Stolt over the course of five years. The narrow interpretation advocated by *939 Stolt is not merited by Tauben’s allegations, the Second Circuit’s decision in Shipping Fin., or other recent case law. (See, Robert E. Derecktor, Inc. v Norkin, supra, at 793 [“cramped constructions of (admiralty jurisdiction) are decisively obsolete”].) Accordingly, because the alleged agreement is maritime, the Statute of Frauds is inapplicable and summary judgment is denied.
[Portions of opinion omitted for purposes of publication.]

 Notably, the “ ‘fundamental interest’ ” giving rise to admiralty jurisdiction is “ ‘ “the protection of maritime commerce.” ’ ” (Exxon Corp. v Central Gulf Lines, supra, 500 US, at 608.)